## WALDRON *v.* WILLARD and others.

Goods in the charge of a common carrier having been damaged, were sold by him. The consignor assigned "all his interest in the goods" to the plaintiff; *Held*, a valid assignment of the right of action against the common carrier for non-delivery under his contract.

Waldron *v.* Willard.

APPEAL from a judgment of the Supreme Court, at general term in the sixth district, affirming a judgment rendered upon the nonsuiting of the plaintiff, by Mr. Justice MASON, at the Chenango circuit. The facts sufficiently appear in the following opinion. The cause was submitted to this court on printed arguments.

*Warren Newton*, for the appellant.

*Abbott & Church*, for the respondents.

HARRIS, J. On the 22d day of April, 1851, the firm of Bowen & Waldron, in pursuance of a previous agreement made with the agent of The Chenango Lake Boat Line, of which the defendants were proprietors, shipped, at the city of New-York, upon a boat running in that line, goods of the value of $1,000. These goods were to be delivered at Sherburne, in the county of Chenango. On the following day, the boat, while on its passage up the Hudson river, was sunk. Fifty-five days afterwards, it was raised, and the agent of the line took possession of all the goods on board, and had them sold at auction for the benefit of the line.

After all this had occurred, W. & J. Bowen, who, with the plaintiff, composed the firm of Bowen & Waldron, executed and delivered to the plaintiff an instrument in the following terms:

"*September* 11, 1851.

"We have this day sold all our interest, which is one-half, in the goods sunk by the boat Wyoming, in the spring of '51, for the sum of $400, payable six months from date, with use, to M. N. Waldron, of Pharsalia.

"W. & J. BOWEN."

The action was brought to recover damages for a breach of the contract to deliver the goods. It was insisted, upon

the trial, that the paper executed on the eleventh of September was, in legal effect, a transfer of the goods to the plaintiff, and not an assignment of the claim for their loss or non-delivery. This view was sustained by the court, and the plaintiff was nonsuited.

It is a familiar rule in the construction of contracts, that they are to be read in the light of surrounding circumstances, with a view to understand more perfectly the intent of the parties. Courts are not required to confine themselves to the exact signification of the terms found in the contract, when it is plain, from the situation of the parties at the time it was made, and the condition of the subject matter of the contract, that a literal interpretation of the language of the parties would fail to give effect to their intention. It is upon this principle that extrinsic evidence is always allowable, to enable the court to place itself in the position occupied by the parties themselves when they contracted, that thus it may the better discern their real intention.

Kindred to this rule is another, equally familiar and well established, which is, that a written instrument is always to be so interpreted as to give it some effect. Parties to a contract are always to be supposed to have intended something, rather than nothing, by what they have said.

Resorting to these rules for aid in giving proper effect to the instrument of the eleventh of September, it seems to me quite obvious that the construction which prevailed at the trial was erroneous. The goods had long since been lost. The entire cargo of the boat, after being under water nearly two months, had been sold at auction, without reference to ownership. It is under these circumstances that the parties declare that the one has sold to the other all interest in the goods sunk. To say that by this it was intended that the title to the goods themselves should be transferred, would be to give the transaction no effect at all. The goods were irrecoverably gone, and the parties knew it. All that was left was a cause of action against the defend-

ants as carriers, arising from their loss. The plaintiff paid for the transfer, whatever it was, a full price. Who can doubt, looking at the circumstances as they existed when the contract was made, that the parties really intended, the one to transfer and the other to purchase the right of action, which had then accrued against the defendants, for the loss of the goods? I think the contract should have been so construed.

The judgment of the Supreme Court, therefore, should be reversed, and a new trial awarded, with costs to abide the event.

All the judges concurring,

Judgment reversed and new trial ordered.