VEDDER VAN DYCK, Receiver, etc., Respondent, v. JOHN Mc-QUADE, Appellant.

The object and effect of the act of 1875 (Chap. 371, Laws of 1875), in relation to savings banks, was to prescribe a sole and complete rule for their existence, and the exercise of their powers. It applies to corporations then existing, and whatever right of action existed against their trustees for penalties or forfeitures under former statutes was terminated by it.

The provision of said act (§ 33), declaring the trustees of savings banks who vote for the declaring and crediting of any interest or dividend in excess of the interest or profits earned, personally liable to the corporation for the amount of the excess, does not limit the interest, which may lawfully be voted for, to net profits. If the trustee votes for a dividend less than the whole amount of interest or profits earned, without any deduction therefrom for expenses, although the earnings have not been actually received, he does not, in the absence of fraud or bad faith, overstep his statutory duty, and is not liable to the penalty.

Whenever a dividend is declared and credited to a depositor it becomes his property, to which he is entitled in preference to the creditors of the corporation.

It seems that a trustee, in an action against him to recover the penalty, cannot avoid liability because the manner of voting, and of recording the vote prescribed by the statute was not followed; he can waive the direction, as it was made for his benefit, but cannot take advantage of the omission.

Statement of case.

The Y. Savings Bank, of which defendant was a trustee, in pursuance of the requirements of its charter (§ 6, chap. 338, Laws of 1869), at the opening of its bank, posted notices of the rate of interest to be paid by it upon deposits; and thereafter paid interest at the rate stated up to January, 1877. In an action brought by plaintiff, who was appointed receiver of said bank, in July, 1877, to recover the interest so paid, the referee found that the interest received from investments of the funds of depositors exceeded the interest paid them, but that its expenses exceeded its earnings and income. No fraud or other misconduct, or want of ordinary care and skill was imputed to defendant. *Held*, that defendant was not liable; that the order of payment of the debts of the bank, and what portion of its profits the trustees might from time to time divide, related to its general business, which was left to the judgment of the trustees (§§ 4, 7), and as long as it was exercised in good faith in the due course of management, no common-law liability was incurred; nor was there any injury to the corporation, so that in the light of the common law there was no rule by which damages could be assessed; that no liability was imposed under the chapter of the revised charter in reference to moneyed corporations (1 R. S., chap. 18), to which by said charter the bank was made subject " so far as applicable," as the prohibition in said chapter against paying dividends to stockholders save from " surplus profits " has no application, the interest payable to depositors of savings banks not being dividends within the meaning of the statute, and as said statute prescribes the remedy for its violation; that if said chapter of the Revised Statutes ever had any force as applicable to savings banks it became inoperative after the passage of the said act of 1875; also, that no liability attached under the provision of the act last mentioned (§ 33), declaring the trustees of a savings bank, who vote for a dividend in excess of the interest or profits earned, liable to the corporation for the amount of the excess, as the interest paid was not in excess of that earned.

Assessments were made and paid into the bank by the trustees, under a resolution adopted by the board to the effect that such assessments should be considered as loans on interest " not to be returned to the payer until the expiration of one year, unless otherwise ordered by the board and the profits of the bank warrant it." *Held*, that under the resolution the money advanced became payable absolutely at the end of the year, and before that time at the option of the bank, in case the profits warranted it ; but that, as, so far as it appeared from the pleadings and evidence the fund advanced was joint, and as there was no statement of an individual advance or loan by the defendant, he could not apply the general fund in discharge of any individual liability on his part,

*Hun* v. *Cary* (82 N. Y. 65), *Austin* v. *Daniels* (4 Den. 300), *F. Ins. Co.* v. *Jenkins* (3 Wend. 130), *Butts* v. *Wood* (37 N. Y. 317), *Gillet* v. *Moody* (3 id. 479), *Robinson* v. *Smith* (3 Paige, 222), *Cunningham* v. *Pell* (5 id. 607),

*Com. Bank* v. *Union Bank* (11 N. Y. 203), *Osgood* v. *Laytin* (3 Keyes, 521), *People* v. *Sup'rs* (4 Barb. 64), *Vanderkar* v. *R. & S. R. R. Co.* (13 id. 390), distinguished.

(Argued March 18, 1881 ; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of May, 1879, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by plaintiff, as receiver of the Yorkville Savings Bank of the city of New York, against defendant, as one of its trustees, to recover the amount of interest or dividend paid to depositors on the ground that, at the time the said dividends were declared and paid, there were no net profits, earnings or income out of which any dividend could lawfully be paid.

The material facts are stated in the opinion.

*Alexander Thain* for appellant. The defendant was not liable at common law. (*Spering's Appeal,* 71 Penn. St. 11 ; 10 Am. Rep. 684 ; *L. & O. R. R. Co.* v. *Bridges,* 7 B. Monr. 556 ; *Overend & Gurney Co.* v. *Gibbs,* L. R., 5 H. L. Cas. 480, 486, 493, 494, 501, 502 ; *S. C.,* 3 Eng. Rep. 1 ; *Knight* v. *Earl of Plymouth,* 1 Dic. 126 ; *S. C.,* 3 Atk. 480 ; Hill. on Trustees [4th Am. ed.], 67 ; marg. p. 43 ; Story on Equity, 514, § 1272 ; *Hart* v. *Ten Eyck,* 4 Johns. Ch. 76 ; *Thomson* v. *Brown,* id. 619–629 ; Schouler on Bailments, 15.) Defendant is not liable under the Revised Statutes. (2 R. S. [5th ed.] 517–519, 599, 601, 526, § 6 ; *Burrall* v. *Bushwick R. R. Co.,* 75 N. Y. 211, 216 ; *Huntington* v. *Savings Bk.,* 6 Otto, 388–392. Chapter 371, Laws of 1875, established an entirely new and distinct code of laws relating to savings banks and repealed all prior enactments in relation thereto. (*Excelsior Pet. Co.* v. *Lacey,* 63 N. Y. 422 ; *Knox* v. *Baldwin,* 80 id. 610 ; *Hartung* v. *The People,* 22 id. 29 ; *Butler* v. *Palmer,* 1 Hill, 324.) Defendant, although called a " trustee," was not such technical

trustee as to be liable where a trustee would have been held at common law. (*Spering's Appeal*, 71 Penn. St. 11 ; *S. C.*, 10 Am. Rep. 684 ; *First Nat. Bk., etc.* v. *Rathbun*, 10 W'kly Dig. 495 ; Hill; on Trustees, introduction to 4th Am. ed.) Assuming that interest was illegally paid to depositors, the law does not impute to the defendant knowledge of the affairs of the corporation, to the extent of knowledge on his part that such interest was illegally and fraudulently paid. (*Wakeman* v. *Dalley*, 51 N. Y. 27–32.)

*Freling H. Smith* for respondent. The trustee and officers of a bank or other corporation are but agents of the corporation, and, if they transcend or abuse their powers, are as much responsible to their principal as are the agents of an individual. (Angell & Ames on Corporations, §§ 312–317 ; Potter on Corporations, §§ 324–333 ; *Austin* v. *Daniels*, 4 Den. 299, 301 ; *Franklin Ins. Co.* v. *Jenkins*, 3 Wend. 130 ; *Butts* v. *Wood*, 37 N. Y. 317 ; *S. C.*, 38 Barb. 181 ; *The Atty.-Gen.* v. *The Utica Ins. Co.*, 2 Johns. Ch. 389 ; *Robinson* v. *Smith*, 3 Paige, 222 ; *Com'l Bk. of Penn.* v. *Union Bk. of N. Y.*, 1 Kern. 203 ; *Cumberland Coal Co.* v. *Sherman*, 30 Barb. 553, 571 ; *Gillet, Rec'r of St. Lawrence Bk.*, v. *Moody*, 3 N. Y. 479 ; *Osgood, Rec'r, v. Laytin*, 3 Keyes, 521 ; *Cunningham* v. *Pell*, 5 Paige, 607 ; *Scott* v. *De Peyster*, 1 Edw. Ch. 513 ; *Hun, Rec'r, etc.*, v. *Cary*, 82 N. Y. 65 ; *Litchfield* v. *White*, 3 Sandf. 545.) It was a waste and misapplication of the funds of the bank to declare dividends when there were no net or surplus profits, or income, for which each trustee approving the same is liable. (Angell & Ames on Corporations, § 312 ; Potter on Corporations, § 324 ; *Excelsior Pet. Co.* v. *Lacy*, 63 N. Y. 422 ; *Gratz* v. *Redd*, 4 B. Monr. 178 ; *Lexington R. R. Co.* v. *Bridges*, 7 id. 559 ; *Henry* v. *Vermillion & Ashland R. R. Co.*, 17 Ohio St. 187 ; *French, Rec'r*, v. *Redman*, 13 How. 502 ; *Smith* v. *Hurd*, 12 Metc. 371 ; *Osgood, Rec'r*, v. *Laytin*, 3 Keyes, 521.) It is, at common law, a misapplication of the funds of a corporation to declare dividends other than out of net profits. (*Lockhart* v. *Van Alstyne*, 31 Mich. 76 ; *Pitts-*

*burg R. R. Co.* v. *Alleghany Co.*, 63 Penn. St. 126 ; *Carpenter* v. *N. Y. & N. H. R. R. Co.*, 5 Abb. Pr. 277 ; *Hughes* v. *Vt. Copper Mining Co.*, 72 N. Y. 207, 210 ; 1 R. S., § 1, p. 589.) A director must be bound to know the course of business and the situation of the affairs of his corporation. (*Edwards on Bailments* [2d ed.], 77 ; *Osgood* v. *Laytin*, 3 Keyes, 522 ; *Mechanics' Bk.* v. *Seton*, 1 Peters, 299, 309.) The fact that defendant attended the meeting of the trustees and did not object to the resolutions authorizing the dividends, clearly raises the presumption that he assented to and voted for such resolutions. (*Mowry* v. *Indianapolis, etc., R. R. Co.*, 4 Bissel [U. S. Cir. Ct., Ind.], 78.) The declaration and credit of the dividends, so far as the liability of the defendant is concerned, is equivalent to their payment. (*Carpenter* v. *N. Y. & N. H. R. R. Co.*, 5 Abb. Pr. 277 ; *Jackson* v. *Newark Plankroad Co.*, 2 Vroom, 277 ; *King* v. *Paterson & Hudson R. R. Co.*, 5 Dutch. 504 ; *Stoddard* v. *The Shetucket Foundry Co.*, 34 Conn. 542.) The trustees are liable severally at common law as well as by statute. (Angell & Ames on Corporations, § 312 ; Potter on Corporations, §§ 326, 332 ; *Franklin Ins. Co.* v. *Jenkins*, 3 Wend. 130 ; *Hun* v. *Cary*, 82 N. Y. 65.) Even if the act of 1875 (Chap. 371) repealed the provisions of the Revised Statutes as to savings banks, such repeal does not affect the plaintiff's common-law remedy. (*The People* v. *The Sup'vrs, etc.*, 4 Barb. 64 ; *Vanderkar* v. *The R. & S. R. Co.*, 13 id. 390, 393.)

DANFORTH, J. By its act of incorporation (Laws of 1869, chap. 338, § 6) the bank was required to receive on deposit such money as should from time to time be offered ; to invest or loan it in the manner therein prescribed, for the use, interest and advantage of the depositor, and repay the same to him at such times, and with such interest and under such regulations as the board of trustees should from time to time prescribe ; "which regulations," the act declares, "shall be put up in some public and conspicuous place in the room where the business of the corporation shall be transacted, and printed upon

the pass-books of the depositors," and be binding upon them and upon the corporation.

The defendant became one of its trustees, and the bank, soon after the passage of the act, commenced business, which it continued until July, 1877, when the plaintiff was appointed its receiver. The trustees, in pursuance of these provisions, did at the opening of the bank propose to pay upon deposits semi-annual interest at the rate of six per cent per annum; and posted their notices or placards as required by law. They complied with their undertaking until and including January, 1877, and this defendant is now sued, and judgment has been rendered against him, upon the ground that these payments of interest were declared and credited by the trustees, himself included, when " there were no net profits, earnings or income, made or received," out of which they could legally or properly be declared or paid; and as to those made after May, 1875, upon the further ground that they were in violation of the statute, to which I shall refer. No fraud or other misconduct is imputed to the defendant; nor is it said that any person received or was credited with interest to which, by the terms of his contract, he was not entitled; and the referee expressly finds : " That the only dividends declared and paid were for semi-annual interest to savings account depositors at the rate of six per cent per annum. That this was done in accordance with the terms of printed placards or notices previously posted or distributed, to the effect that persons depositing would be paid semi-annual interest at the rate of six per cent per annum. That the interest received from the investment of the funds of depositors exceeded the interest or dividends paid them, by a sum exceeding the sum of $1,500." But he also finds that the expenses of the bank were in excess of its earnings and income, and that the appropriation of the interest to the depositors was a violation of duty. There is no finding, nor would the evidence warrant a finding, that this defendant was or that his co-trustees were guilty of any act of non-feasance or mis-feasance in the management of the bank, or that its expenses were needlessly or improperly enlarged, or that there

was any want of ordinary care or skill in conducting its affairs.
Nor is it suggested in the findings of the referee, or in the ex-
tended argument of the learned counsel for the respondent,
that the defendant, as trustee, exceeded the limits of power
fixed by the charter. I am unable, therefore, to discover how
at common law the defendant has incurred liability. He, with
his associates, was bound to conduct the affairs of the bank in
furtherance of the ends of its creation. It could not be done
without contracting obligations, which — not only from their
very nature, but by the terms of the charter — were to bear
interest. So expenses were to be incurred, and this at the
beginning of the enterprise. Where the statute speaks of
either, it speaks of both ; it contemplates also the contin-
gency of loss in its business. In speaking of a surplus and
authorizing its accumulation it provides that "after deducting
all necessary expenses, and paying the usual interest to de-
positors, it may accumulate and hold a surplus fund to meet
any contingency of loss." Suppose, in the launching of a new
institution, a difficulty occurs. Money not at once invested, or
expenses inevitable from the outset press upon the trustees.
Who is to determine in what order they shall be paid ? Would
it be wise or prudent to refuse to the depositor the interest
promised, or maintain the credit of the bank and increase its
revenue by its payment ? Surely, this was a question for the
trustees, acting in good faith and as prudent men, to determine.
An individual may purchase property, contract debts, incur
new liabilities, and keep on in business, although he has debts
unpaid; and if he does this in good faith and hope of a more
prosperous fortune, he violates no moral or legal duty. And
this is so, although at the time of purchase he is aware that his
property is not sufficient to pay his debts. (*Nichols* v. *Pin-
ner*, 18 N. Y. 295.) The principle of this rule applies to the
managers of corporations. (*Scott* v. *Depeyster*, 1 Edw. Ch. 513 ;
*Hodges* v. *N. E. Screw Co.*, 1 R. I. 312.) No fact is shown
inconsistent with an honest and *bona fide* administration of
the affairs of the corporation. Nay more, the charter permits
the funds of the corporation to be used to pay necessary cur-

rent expenses, under the direction of the trustees. It provides or compels no other means from which to pay them, but it does not prescribe the order of payment. All this, and what portion of the profits they might from time to time divide, relates to the general business and affairs of the corporation, is left to the judgment of the trustees (§§ 4, 7, *ante*), and so long as this is exercised in good faith, in the due course of management of its business, they are not accountable to the court, even though they may deem the conclusion erroneous (*Brown* v. *Mon. Ry. & C. R. Co.*, 4 Eng. L. & Eq. 114; *Ely* v. *Sprague*, Clarke, 351), unless, in the language of the charter, it "is satisfied" that they have "been guilty of fraud or misconduct." (Act of 1869, *supra*, § 13.) But further, looking at this question in the light of the common law, I discover no rule by which damages may be assessed, except upon the principle of compensation, and that is to be equivalent to the injury. It goes no further. What actual loss has the corporation sustained? Its property has gone to the payment of its debts. Its depositors have received it in discharge of the obligation, on faith in which they placed their money with the bank. No payment has been made for which the bank was not bound by the express terms of its charter so long as it transacted business. Each deposit bore interest, and the payment has not exceeded the sum stipulated. At most there has been an error of judgment; or if there has been a breach of duty, it is purely technical, and one of which the common law will take no notice. Without damage it tolerates no action. The cases cited by the respondent are not in conflict with these views. In *Hun* v. *Cary* (Sept. 1880, opinion by EARL, J.*) the authorities were examined and the recovery upheld, because it was thought the evidence justified a finding by the jury that the case then in hand was one of improvidence, and of reckless and unreasonable extravagance, and not a mere error or mistake of judgment. In *Austin* v. *Daniels* (4 Den. 300) the defendant, cashier of a bank, was charged because he had dealt without authority and at loss to the bank in matters in no way con-

---

* 82 N. Y. '65.

nected with its proper business. *Franklin F. Ins. Co.* v. *Jenkins* (3 Wend. 130) came up on demurrer and was decided for the defendants, but it involves nothing of moment here. Indeed, it was there conceded for the plaintiffs that the defendants, directors of the plaintiffs' corporation, were not liable for mistake, error of judgment, or even negligence, but only for willful and corrupt mismanagement. In *Butts* v. *Wood* (37 N. Y. 318) and *Gillet* v. *Moody* (3 id. 479) the cause of action was a fraudulent transfer or appropriation of corporate property to or for the benefit of a director or trustee, and like *Robinson* v. *Smith* (3 Pai. 222) and *Cunningham* v. *Pell* (5 id. 607), involved a fraudulent breach of trust, bordering at least upon knavery, and waste of corporate funds. *Com. Bank of Penn.* v. *Union Bank of N. Y.* (11 N. Y. 203) related to the liability of defendant as a collecting agent. *Osgood* v. *Laytin* (3 Keyes, 521) was an action given by the statute regulating insurance companies (Laws of 1848, chap. 178) against a stockholder to recover back money illegally paid to him as a dividend. Such others cited as could be deemed authoritative in this court have been examined, but seem of no more force than those already referred to. They suggest no deviation from the rule which in an action gives compensation only for actual loss. It is often otherwise with a statute. That speaks the will of the legislature, prescribes a rule, and enforces obedience sometimes, but not always, without regard to special damage or loss or consequences of its violation.

The respondent contends that this case may be supported under the provisions of more than one positive law. *First:* The Revised Statutes. The charter (Laws of 1869, chap. 338, *supra*) declares that the corporation shall be subject, among others, to the provisions of the eighteenth chapter of the first part of the Revised Statutes, * * * "so far as the same are applicable." He cites 1 R. S., article 1, title 2, part 1, entitled "Regulations to prevent the insolvency of moneyed corporations and to secure the rights of their creditors and stockholders," and points to section 1, subdivision 1, which declares that "it shall not be lawful for the directors of any moneyed

corporation to make dividends, except from the surplus profits arising from the business of the corporation." This seems inapplicable to the case in hand, and furthermore that the very conditions under which the action is brought show that no offense has been committed against that statute. By section 3, id., a mode is prescribed for ascertaining the "surplus profits" from which alone a dividend can be made, viz.: from the "actual profits" shall be deducted "the interest paid or then due or accrued on debts owing by the company." There can be no question but that every deposit received by a savings bank creates a debt from and to be paid by it. Such is the nature of its business and its object as set forth in section 6 of the act. (Laws of 1869, *supra*.) It is obvious that the dividend referred to by the Revised Statutes (*supra*), means something quite different from interest. Interest accrues from the moment of deposit; a dividend is the appropriation of the earnings of a corporation, from whatever source derived, among its share or stockholders. A depositor is not a stockholder; but the section cited (§ 1) speaks of "stockholders," "capital stock," "shares of its own stock" — characters not belonging to, and terms not applicable, to the corporation of which the defendant was a trustee — and in terms, provides for a dividend after payment of or provision for interest, which alone is in question here. Under the charter nothing but interest can be paid; under the Revised Statutes the stockholder can have no dividend until after interest due to others has been deducted. No interest can be due to him. Again, the statute (1 R. S. *supra*) prescribes the penalty for declaring such dividend. It enacts that every director concurring therein "shall be liable personally to the creditors and stockholders respectively of the corporation to the full extent of any loss they may respectively sustain from such violation." The present action is to enforce no such remedy. It cannot be gathered from any part of the case or pleadings how any loss could or did accrue to the bank, or to any creditor of the bank, by reason of the act complained of. It is absurd to say that the bank suffers by payment of its just debts; and it is plain its creditors could not, for they

alone received the money. Besides, the action, under section 10 (*supra*), is given to the person who sustains the loss, and a recovery is measured by it alone. The action is not given to the corporation, but to the individual. The plaintiff, therefore, gets no aid from the statute cited.

The respondent also relies upon section 2, title 4 of the same chapter. It makes it unlawful for the directors or managers of certain companies to make dividends, except from "surplus profits," and for doing so an action is given not alone to creditors, but to the corporation, and the liability extends to the full amount of the capital stock of the company so divided or paid out. The very terms used, and the remedy given, exclude a case like the present, for in this, as in the other statute (Tit. 1, *supra*), there are "stockholders," "shares" and "capital stock;" and here also provision is made against debts exceeding at any time "three times the amount of capital stock actually paid in." No part of that act has meaning or adaptation to such a corporation as the one before us; all these conditions are lacking.

If, however, either of the statutes referred to ever had any force as applied to savings banks, they became as to those banks inoperative after the passage of the act of 1875, entitled "An act to conform the charters of all savings banks or institutions for savings to a uniformity of powers, rights and liabilities, and to provide for the organization of savings banks, for their supervision, and for the administration of their affairs." (Laws of 1875, chap. 371.) Its title indicates a legislative intent not only to revise the laws relating to such corporations, but to treat the whole subject *de novo*, prescribe a sole and complete rule for their existence and the exercise of their powers. It applies in terms to then existing corporations, as well as to those thereafter to be formed, and by its broad and inclusive repealing clause, " of all other acts or parts of acts relating to savings banks or savings institutions," leaves no doubt that its purpose was to make a *tabula rasa* of the pre-existing law. It embraces and defines their rights, as well as their powers, and as there is no saving clause, if any right of action existed for

penalties or forfeiture under former statutes, it was deter-
mined by the operation of this act. (*Miller's Case*, 1 W. Bl.
451; *Butler* v. *Palmer*, 1 Hill, 324; *Hartung* v. *People*,
22 N. Y. 95; *Knox* v. *Baldwin*, 80 id. 610.) The conten-
tion of the respondent to the contrary overlooks the distinc-
tion recognized in the cases cited by him (*People ex rel.
Fountain* v. *Supervisors of Westchester County*, 4 Barb. 64;
*Vanderkar* v. *R. & S. R. R. Co.*, 13 id. 390), between
actions for penalties and vested rights acquired by virtue
of a statute. In the first, the court conceded that a repeal de-
stroys a penalty, although suits are pending for its recovery;
and in the second, they say: "It was not a penalty the plaint-
iffs claimed." In each case the claim was for damages assessed,
in one under a statute giving compensation for land taken,
and in the other for injury to cattle occasioned, as was alleged,
by the defendant's omission to perform a statutory duty.

A more serious question and the only one, I think, of any
difficulty is presented by the remaining proposition of the re-
spondent's counsel, by which he seeks to bring the defendant
within section 33 of this act. It is thereby made the duty of
the trustees of such corporation to regulate the rate of interest
or dividends so that the same shall not exceed six per cent per
annum, permits them to classify their depositors, prohibits the
payment of interest on deposits beyond the time of deposit, de-
clares that " no dividends or interest shall be declared, credited
or paid, except by the authority of a vote of the board of trustees
duly entered upon their minutes, whereon shall be recorded the
ayes and nays upon such vote, and whenever any interest or divi-
dends shall be declared and credited in excess of the interest or
profits earned and appearing to the credit of the corporation, the
trustees voting for such dividend shall be jointly and severally
liable to the corporation for the amount of such excess so de-
clared and credited." It is found that interest was declared
and credited contrary to the provisions referred to until and in-
cluding the 1st of January, 1877, and that the defendant voted
therefor. It appears, however, that the ayes and nays were
not recorded, " and there is no evidence that a formal vote was

taken on a resolution to pay dividends, or that the defendant's name was called and that he thereupon voted aye." Upon this the appellant argues that no liability can attach. But the manner of voting and of recording the vote was for the benefit of the trustee. If followed it would establish his innocence or his participation in the forbidden act. Whether it should be followed was for him to determine. He could waive the direction, for it was made for his safety, but he cannot take advantage of the omission. (*Buel* v. *Trustees of Lockport,* 3 N. Y. 197.) The design of the statute was to prevent the declaring and crediting of dividends under certain circumstances and except by vote of the trustees. It would be something more than an evasion of the statute; it would be a fraud upon it if the thing prohibited should be sanctioned, because the formal method of doing it differed from that prescribed. Some action on the part of the trustees is essential, something more than passive acquiescence or silence. It is only the trustee " voting " who is made liable. There must then in some way be an expression of a desire or wish on his part, and so manifested as to authorize the act. He must promote the violation of the law in this manner. But for proof of it the plaintiff is not confined to the minutes or to be defeated by reason of neglect to follow the prescribed mode of keeping them. The defendant has been held liable for the dividend of January 1, 1877. He is not shown to have had any thing to do with it. Indeed, it is conceded by the learned counsel for the respondent that the defendant was not present at the meeting of the board of trustees at which the dividend was declared, and that he did not vote for it. He is not liable, therefore, for it. As to the dividend of January 1, 1876, the evidence fails to connect him with it. There is no evidence of the action of the board of trustees in reference to it. I have carefully examined not only the exhibits and the case at the folios cited by the respondent, but the whole case; I find no oral evidence respecting it. The exhibits show a meeting of the board on the 30th of December, 1875. The defendant was present, a variety of business was transacted and disposed of in an orderly way, by motions

and by action thereon by the board, either by approval or order, and at the close of the record appear these words : " The committee agreed to the usual dividend of six per cent." It is made by statute, *supra* (§ 18), one of the duties of the board of trustees to receive reports of its committees. Nothing more was done here. No action of the board was had upon it nor were there signs of approval or disapproval ; no voting in any way. Nor is there evidence that the defendant was a member of the committee even. There is no finding that he was, and the evidence, though inconclusive, indicates the contrary. A witness for the plaintiff, speaking of certain dividends made in and before the year 1873, says : " There had been a committee to recommend dividends. It was composed of officers of the bank. Defendant was vice-president in July, 1872, and in July, 1873, and was a member of the committee I spoke of at those dates." The referee, at the plaintiff's request, found that the defendant was until December 29, 1873, its first vice-president and chairman of its executive committee. We may infer that as vice-president he had been a member of that committee ; there is no reason to suppose he continued to be after the time stated by the referee, and in the record of proceedings of December 28, 1876, we find the committee named, but the name of the defendant is not among them. He is not liable for the dividend of January, 1876. He is not shown to have voted for the dividend of July, 1875. There is no oral evidence in regard to it, nor minutes of proceedings of any meeting at which it was declared. The evidence relating to it is found in the minutes (misprinted, I infer) " January 29, 1875." The record was introduced by the plaintiff while his witness, Gillelan, was on the stand, and is there referred to as of July 29, 1875. Assuming this to be so, it shows the approval by the defendant of the action of the committee in declaring the six per cent dividend for July. The proceedings of the committee do not appear, but the referee has found that the dividend was declared and credited on or about the 1st day of July. It must, therefore, have been consummated before the 29th day of that month, and the act of the defend-

ant on that day was not the act forbidden by statute. He approved of the dividend after it was made; he did not declare it. The moment a dividend is declared and credited it is the property of the individual depositor, and he is entitled to it. It becomes a debt due from the corporation. This was fully recognized in *Le Roy* v. *Globe Ins. Co.* (2 Edw. Ch. 657), where, although the company was insolvent, it was held that the money appropriated and set apart for distribution among the stockholders by way of dividend became a trust in the hands of the corporation, to which the stockholders as individuals had acquired vested rights, and they consequently were entitled to the fund in preference to the creditors of the corporation; and in *Kane* v. *Bloodgood* (7 Johns. Ch. 90), where the chancellor held an action at law for money had and received would lie by the stockholder against the corporation for the recovery of a dividend. The statute must be strictly construed, and the court cannot substitute one thing for another. To approve of a thing after it is done is by no means the same as doing it. As to this, therefore, the plaintiff must fail, for he has not exhibited the defendant as one doing a prohibited act. Under other statutes a trustee or director becomes liable, unless he shows his dissent from the forbidden action. In one (Laws of 1848, chap. 40, § 13), by filing a certificate of his objection in writing with the clerk of the company, and the county clerk; in another, by causing his dissent to be entered on the minutes of the directors; but under this statute (act of 1875, *supra*), nothing of this kind is necessary. His co-operation must be affirmatively shown.

With the dividend of July, 1876, the case is different. The defendant was then trustee, was present at a meeting of the board on the 6th of July, at which, as the minutes say, "the committee stated a dividend of six per cent had been determined upon for past six months;" and then follows the word "approved:" From this it is apparent the attention of the board of trustees, and among them the defendant, in his official character and while acting as trustee, was called to the matter. The referee was justified in his inference that the ap-

proval was manifested in the usual manner by vote, and the contrary not appearing, that the defendant joined therein. If so, his assent and his vote were sufficiently established. He was not concurring merely in an act which had been done, but by approval was making the determination of the committee effectual, and in effect declaring the dividend. To the extent then of the dividend declared at this time (July, 1876) the defendant would be liable, except for the considerations I am about to state. The action is upon the theory that interest could be paid the depositors only from "net profits;" that payment except therefrom would not only be a misapplication of the funds of the bank, but a violation of the statute. (§ 33, *supra*.) This view was sustained by the referee, and is upon this appeal reasserted by the respondent's counsel. So far as this stands upon the common-law duty of a trustee, it is unnecessary to add to the suggestions already made as to his duty in providing for and declaring a payment of interest; but the plaintiff's claim cannot be assented to as a proposition of law or as one which, standing by itself, would be a rule of action. It would be different if fraud intended or attempted had been shown (*Ex. Pet. Co.* v. *Lacey*, 63 N. Y. 422), but there is nothing of that kind in the plaintiff's favor, and we agree with the remarks of Lord Justice SELWYN in *Stringer's Case* (L. R., 4 Ch. App. 477), that "if we were to lay down as a rule that there must be actually cash in hand to the full amount of the dividend declared, we should be laying down a rule which would be inconsistent with what I understand and believe to be the custom of all companies of this description, and also inconsistent with mercantile usage; and we should be laying down a rule which would open the door to and encourage a very great amount of litigation, because there are very few dividends indeed which would not be open to more or less question if such a rule as that were laid down." Nor do I think the statute (§ 33, *supra*) stands on such rule or contemplated the accumulation of net profits as the only source from which interest might be paid the depositor; and it is this which concerns us at this point of our inquiry. It should be ob-

served that such term, "net profits," is not used in the statute. The words are "interest or profits earned and appearing to the credit of the corporation." There is a difference between interest or profits "earned" and interest or profits "received." In any just transaction they must be earned before they are due, and when due they are earned, although not received, and are none the less earned, although never received. The statute uses these different words. In section 38 the report of the corporation must among other things state "the whole amount of interest received or earned and the amount of dividends credited to depositors." Now when we find in section 33 that the trustee does not overstep his statutory duty so long as he declares no interest or dividends beyond interest or profits "earned," it should be held that if by comparing the amount of interest earned with the dividend it appears the latter falls short of the former, he cannot be subjected to the penalty. He may inquire what interest has been earned, and does not incur this penalty in declaring a dividend upon it as a basis, although it has not been actually received. We might, perhaps, take judicial notice that interest is usually made payable upon investments on the 1st of January and 1st of July, and as the interest is to go to the depositor at the same time and to be previously declared, the amount becoming due the bank would necessarily be looked to. But the defendant need not rely on that necessity. The referee has found that the interest actually received by the bank exceeded all interest or dividends declared or credited by it; and in regard to the particular declaration of interest I am considering (that of July, 1876) it appears that it was in the aggregate $475.96, while the earnings were $1,434.21, during the six months then ending. But the referee, deducting the expenses, finds the net income insufficient, or that there is none. It would seem also, from the items required to be stated in the report, that the statutory scheme contemplated the dividend might lawfully be paid from the whole amount of interest or profits received, without first deducting the expenses. It must show, the statute says, "the whole amount of interest received or earned;" not calling for

diminution by expenses; and then, the amount of dividends credited to depositors. The one is placed in juxtaposition with the other and no intermediary item. There is no finding, and upon the facts there could not be one, that the dividend was in excess of the profits earned. The term " net profits " or " interest " is quite different. It describes the remainder of income after deducting expenditures. In *The People* v. *Sup'rs of N. Y.* (18 Wend. 606), a case relating to taxation, and in which different statutes embodying the words "income or profits," with and without modifying words, are dealt with, Nelson, J., says: "It is apparent that the legislature in using the phrase "any profits or income" did not intend to convey the same idea as that indicated by the words "net income." Income and profits on one side, and expenditures on the other, furnish data from which may be ascertained "net income" or "net profits" — phrases well understood in common affairs, explained and applied by law writers (Story on Partnership, § 34) and by the courts, and recognized by the statutory words "clear profits" or "surplus profits."

I have before referred to article 1, title 2 of Revised Statutes. There "surplus profits" form the basis of dividends (§ 1, *supra*), and a method is prescribed for ascertaining them, by making certain deductions from "actual profits." Still other language is used in the statute relating to turnpike corporations. (1 R. S., chap. 18, art. 1, pt. 1, tit. 1, p 580, § 14, subd. 1.) It is there made the duty of the directors to keep an account of all tolls received and of all moneys disbursed, and deducting costs and charges, to make and declare a dividend of the clear profits and income of the road among the stockholders." So, there is in the act before us (§ 33, *supra*) a provision for the benefit of the depositor, to the effect that the trustees shall so regulate the rate of interest or dividends upon its deposits that depositors shall receive as nearly as may be all the profits of the corporation, after deducting necessary expenses and reserving such amount (not more than ten per cent) as the trustees may deem expedient, as a surplus fund for the security of depositors. But these provisions and those of other statutes

are essentially different from the one under consideration. This implies that the interest paid the depositor may be less than that received by the corporation, and enacts that if more is paid than is earned, it shall be at the risk of the trustees directing it. The provision in question is penal and therefore cannot be extended by implication, for by indulging it the court would " take upon itself the office of the legislature (*Underhill* v. *Longridge*, 29 L. J. M. C. 65); and instead of construing the statute, alter it. (*In re Sneezum*, L. R., 3 Ch. Div. 472.) The plaintiff contends that a penalty has been incurred, and he must fail, because he has not shown that the words of the statute distinctly enact that under the circumstances it has been incurred (*Fletcher* v. *Lowdes*, 3 Bing. 580; *Garrison* v. *Howe*, 17 N. Y. 466; *Whitney Arms Co.* v. *Barlow*, 68 id. 34), or that there is a clear intent to embrace it. (*Olcott* v. *Tioga R. R. Co.*, 20 N. Y. 210, 222; *Chase* v. *Lord*, 77 id. 1.)

Another point is presented by the appellant, which may become material upon another trial, if one shall be had. It appears that in August, 1869, a resolution was adopted by the board of trustees " that the assessment paid into the bank by the trustees shall be considered as funds loaned to the bank to pay current expenses, subject to . per cent interest not to be returned to the payor until the expiration of one year, unless otherwise ordered by the board and the profits of the bank warrant it." Under this resolution the referee finds that the trustees made contributions in aid of the bank to the amount of $7,995; and the defendant claimed that they should apply in reduction of the sums for which he was charged. The referee, however, held that the bank never became liable to repay the advances, because the profits had not warranted it. and, as the corporation was dissolved, never would warrant it. We think this construction wrong. The money advanced became payable absolutely after the expiration of the year, and before that time, at the option of the bank, in case the profits warranted it. But it was properly disallowed to the defendant. So far as appears, either by the pleadings or the evidence, the fund was joint. There is no statement of an individual

advance or loan by him, or any right on his part to apply the general fund in discharge of his several obligation.

But for the reasons before mentioned the judgment of the General Term and that entered upon the report of the referee should be reversed and a new trial granted, with costs to abide the event.

ANDREWS, MILLER and FINCH, JJ., concur; FOLGER, Ch. J., and EARL, J., dissent. RAPALLO, J., absent from argument.

Judgment reversed.