62h 407
61ad 30

## RUTH TORBETT, RESPONDENT, *v.* PARKE GODWIN, APPELLANT.

*Corporations — liability of directors for a false report — statute strictly construed — it does not apply to debts contracted before the report is filed — right of assignee and of legal representative of claimant — a former judgment against the corporation for the debt not admissible.*

It is declared, by section 21 of chapter 611 of the Laws of 1875, an act relative to corporations, that "if any certificate, or report made, or public notice given by the officers of any such corporation shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof."

In an action brought by an assignee of certain creditors of an opera company, incorporated under said act, to enforce payment of the claims against a director of the company, upon the ground that its annual report was false, it appeared that the report was filed after the claims accrued.

*Held,* that the plaintiff could not recover.

That the statute was highly penal and must be strictly construed.

That the statute must be taken to mean that as to debts contracted after the report was filed the officers who had signed it should be liable; that the purpose of such reports is that the public may be correctly informed of the financial condition of the company in order that it may judge of the credit to which the company is entitled.

That the object of the statute would be satisfied by confining liability to cases where credit might possibly have been given to the company upon the faith of the report

That this view was further confirmed by sections 18 and 19 of said act, in which express language is used in stating when the directors shall be liable for debts contracted before the report is made.

*Semble*, that the penalty was recoverable by an assignee of the claim, although not by the legal representative of a deceased claimant.

That the admission of a former judgment for the same debt obtained by the plaintiff against the corporation was error; that such a judgment was not conclusive, and was not even *prima facie* evidence of the debt.

APPEAL by the defendant Parke Godwin from a judgment, entered in the office of the clerk of the city and county of New York on the 13th day of June, 1891, upon a verdict for the plaintiff for $3,112.25, after a trial at the New York Circuit before the court and a jury; and also from an order, entered in said clerk's office on the 10th day of June, 1891, denying a motion for a new trial.

*Nelson Smith and L. C. Waehner*, for the appellant.

*W. W. Badger*, for the respondent.

BARRETT, J. :

The plaintiff brings this action as the assignee of five employees of a corporation known as The American Opera Company (Limited), to recover from the defendant the claims of these employees against such corporation. It is sought to charge the defendant as a director of the company under section 21 of chapter 611 of the Laws of 1875, pursuant to which act the corporation was organized. The section referred to reads as follows :

" If any certificate or report made, or *public notice given*, by the officers of any such corporation, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof."

The first point presented by the appellant is that this section of the statute does not apply to a liability contracted by the corporation before the report was made. As matter of fact, the liability matured before the report was filed. The contracts with the plaintiff's assignors were made on the 1st day of July, 1886. The breach occurred on the 11th of December, 1886, and the report was filed on the 20th of January, 1887.

It is apparent at the outset that the plaintiff's assignors were not prejudiced or affected in the slightest degree by the filing of this report. Their contracts were not made nor were their services rendered upon the faith of it. It was not, in fact, in existence until after their claims had matured. They have, therefore, no possible claim, legal or equitable, against the defendant except such as the statute expressly gives them.

Now, this statute is highly penal, and the plaintiff must, therefore, show, as was said by DANFORTH, J., in *Van Dyck* v. *McQuade* (86 N. Y., 56): "That *the words of the statute distinctly enact* that, under the circumstances, it (the penalty) has been incurred or that there has been a clear intent to embrace it." Provisions of this character must be strictly construed, and they cannot be extended by implication. (Potter's Dwarris, page 245, and cases there cited.) We have said that this section is "highly" penal, and we have used the expression advisedly. It seems to have been taken literally from the manufacturing act of 1848 (chap. 40, § 15), except that the expression "knowing it to be false," which, in the latter act, follows the words "who shall have signed the same," are omitted. Thus the penalty which formerly attached to downright fraud is now imposed upon mere negligence or inadvertence. A penalty is defined to be "the punishment inflicted by a law for its violation." (Bouvier's Law Dictionary, vol. 2, page 399.) Certainly, the canons of construction should not be strained to add one iota to the punishment here inflicted or to extend its sphere.

We think that neither the words nor the spirit of this section 21 cover debts of the corporation contracted before the making of the certificate or report. Looked at grammatically, the language used refers to debts contracted in the future, and not to those contracted in the past. The director is not made liable for all the debts of the corporation, but only for all those " contracted while they are officers thereof." What does that mean but contracted while they *remain* officers thereof, that is, contracted *during the period of their continuance in office?* And why should we construe this sentence so as to make it read "contracted while they *were* or *are* officers thereof?" That would not be construing the statute, but altering it. (See *In re Sneezum*, L. R., 3 Ch. Div., 472, and *Underhill* v.

*Longridge*, 29 L. J., M. C. [N. S.], 65, cited in *Van Dyck* v. *McQuade*, *supra*.)

This interpretation is emphasized by the use of the preceding words, "who *shall have* signed the same." That implies a looking backward (*after the debt has been contracted*) for the subject of liability. The words "shall have" were, in this connection, quite unnecessary, unless the legislature contemplated debts contracted by the corporation after the making of the report.

What they mean, is this: That, as to debts thereafter contracted, the officers who *shall have* signed the false report, and who are still in office, shall be liable. Otherwise the legislature might as well have said, in plain words, that all officers "signing the report shall be liable for all debts of the corporation contracted during their entire term of office." But this the legislature has not said, certainly not in so many distinct words, and there is no clear intent to embrace such a sweeping liability as would be comprehended within the words which we have paraphrased. The literal meaning is reasonably plain, but even if it were doubtful, the plaintiff must fail under the canons of construction with regard to penal statutes already referred to.

We think, however, that a consideration of the entire act, read in the light of its object and purpose, renders our construction still clearer. This purpose was defined by Judge RAPALLO, in *Pier* v. *Hanmore* (86 N. Y., 101), as follows: "The purpose for which the annual reports are required to be published is that the public may be correctly informed of the financial condition and resources of these companies, in order that they may judge of the credit to which they are entitled."

This doctrine was amplified by Mr. Justice DANIELS in *Walton* v. *Godwin* (58 Hun, 91), where this language was used: "The report has evidently been required as information to the public concerning the financial condition and responsibility of the corporation. This information is intended as a security to persons dealing with the company. And whatever would materially affect their judgment in their dealings, should be regarded as a material representation in the report itself. But if a report proves to be untruthful in representations which would have no affect whatever upon the judgment or conduct of persons dealing with the corporation, such representa-

tions could not be consistently held to be material. And it must be by this criterion that the question of the liability of the persons signing the report should be determined, for if it contains untruthful statements, and those statements appear to be so entirely unimportant that they would not affect, in the least degree, the credit of the company or the conduct of persons dealing with it, then they cannot legally be held to be material misrepresentations."

The construction to be given to the section in question should, if possible, be in harmony with its object and purpose as thus defined. That will be accomplished by confining the liability to cases where credit may *possibly* have been given to the corporation upon the faith of the report. In other words, to debts contracted after it is filed.

This gives force also to the word "representation" as used in the section. That section does not read, false in any material "statement" or material "fact," but false in any material "representation." Representation implies an object addressed. Representation to whom, then? Plainly, to any one who contemplates trusting the company thereafter.

And this view is reinforced by the fact that the false representation which creates liability is not limited by the section to a certificate or report, but may be embodied in any *public notice* given by the officers of the company.

Shall it be said, then, that for any negligent or inadvertent publication the officers of the company are to be mulcted, not only for the possible consequences of such publication, but for debts contracted before it was thought of?

These views are further strengthened by the non-adherence of the Court of Appeals, in several cases, to the literal wording of penal provisions contained in the act of 1848, and by a fair construction of such provisions in the interest of reason and good sense, and to prevent oppression and injustice.

Thus, in *Garrison* v. *Howe* (17 N. Y., 453), it was held that to charge the trustees with individual liability for a debt of the corporation, by reason of the failure to file the annual report required by law, such debt must have been payable during a default, and that the signing of the contract (under which the company subsequently became liable) during the period of such default was not enough.

DENIO, J., speaking for the court, said that : "*If the statute were simply a remedial one, it might be said that the plaintiff's case. was within its equity ;* for the general object of the law, doubtless, was, besides enforcing the duty of making reports for the benefit of all concerned, *to enable parties proposing to deal with the corporation to see whether they could safely do so.*"

So, in *Boughton* v. *Otis* (21 N. Y., 261), it was held that, although the statute said that "*all the trustees*" of the company shall be jointly and severally liable for "*all the debts*" of the company then existing and for all that shall be contracted before such report shall be made," yet, that such trustees were not so liable for debts contracted after their retirement from office, and that new trustees coming into office after a default are liable only for such debts as are contracted while they are in office. In this case it was said that a literal interpretation would give to the language a broader significance than the legislature intended, and *that "the equity and good sense of the statute" must prevail.*

The latter rule was again applied in *Shaler & Hall Quarry Company* v. *Bliss* (27 N. Y., 299), SELDEN, J., observing that the "object of the provision, so far as relates to creditors or persons dealing with the corporation, appears to have been to give such notoriety to the pecuniary condition of the company, through the publication of its annual statements, *as to deprive it of credit, if it shall be unworthy of it.*"

There is still another consideration which should be adverted to, for it seems crucial. We find that when the legislature, in the act under consideration, thought proper to include debts contracted in the past, it used unmistakable language. For instance, in section 18, providing a penalty for failure to file a report, the language is, that, "if any such corporation shall fail so to do, all the directors thereof shall be jointly and severally liable for all the debts of the corporation *then existing, and for all that shall be contracted before such report shall be made.*"

So in the next section (19), with regard to the declaration of a dividend when the company is insolvent or embarrassed. There it is provided that the directors voting in favor of declaring such dividend shall be jointly and severally liable for all the debts of the

corporation " *then existing, and for all that shall be thereafter con-tracted while they shall respectively continue in office.*"

Substitute for the latter phraseology that used in the section under consideration, namely, that the directors who *shall have* voted for the dividend shall be jointly and severally liable for all the debts of the corporation *contracted while they are officers thereof.* Could it be successfully contended that the then existing debts (contracted while the same directors were in office), would be covered by this substitute? And if such contention were made, would not he who made it have to stand, not upon the literal words of the statute, but upon the more reasonable position that existing debts were as much affected by an improper reduction of the company's assets as debts subsequently contracted, and that for that reason it must have been the intent to embrace such existing debts?

And is not this latter suggestion a perfect answer to the question, why were the words "then existing" and "thereafter contracted" used in the one section and not in the other? Is it not apparent that, in the one case, existing debts would necessarily be affected by the fraudulent act of the directors, and, consequently, they were distinctly specified, while in the other, such existing debts would not be affected by the false report, and, consequently, they were omitted?

We think it is quite evident, in view of these divergences of phraseology, that the legislature here intended to convey different meanings by the use of different words, and thereby to widen or narrow the sphere of penal action according to the legislative view of what varying circumstances called for.

Looking, then, at the statute as a whole, we perceive a distinct and reasonable policy with regard to these reports. That policy proceeds upon two lines. First, to require a report and to punish the omission to file it. Second, to require accuracy in the report when filed, and to punish material inaccuracy.

To secure compliance with the first requirement a continuous punishment is inflicted. The directors are made liable for all debts contracted until they obey. Every day that they fail in their duty is a day of continuous liability. It is thus that the law enforces its mandate. When, however, the main requirement is complied with,

the liability resting upon non-action ceases and a penalty, adequate to redress an infraction of the second requirement, is prescribed. The latter penalty has relation to the wrong to be then redressed. That wrong consists in the possibility of credit being given to the company on the faith of the report. Past credit is not affected by the misfeasance, nor is the existing creditor concerned therewith. Thus, the intention was, first, to compel the filing of the report, to make the directors liable for *all debts* in case of failure in this particular and to continue this liability until compliance; then, upon compliance, to create a new liability in favor of all subsequent creditors who might possibly be affected by the falsity of any material representation in the report as filed.

Such is our conclusion upon both the words and the intent of the statute. Any other conclusion would not only be contrary to these words and to this intent, but it would create a double penalty, where the failure to file the report was followed subsequently by inaccurate compliance. For instance, the directors who fail to file a report, as required by law, are made liable for all debts then existing and for all that shall be contracted before the report is filed. Now, according to the plaintiff's contention, when the retarded report is filed, if it be inaccurate, the same directors are again made liable to a new penalty for the same previous debts covered by the first penalty. This, surely, could never have been intended, while the construction which we have given to the section under consideration harmonizes the system devised by the legislature and leaves each section to work out what it was designed to effect.

In view of the conclusion thus arrived at, it is unnecessary to pass upon the numerous other questions presented. We may say, however, that we might not have felt justified in reversing the judgment on the second point presented, namely, the non-assignability of the penalty. It is true that the question does not seem to have been squarely presented to the Court of Appeals by the record in any of the cases. (*Bolen* v. *Crosby*, 49 N. Y., 187; *Pier* v. *George*, 86 N. Y., 613; *Stokes* v. *Stickney*, 96 id., 327; *Brackett* v. *Griswold*, 103 id., 428.) But the dicta are so numerous and from so many distinguished sources, in favor of the assignee's right, that we should have hesitated before expressing a contrary opinion. It may be difficult to appreciate the distinction between ownership of the debt

by direct assignment and ownership by legal devolution. The effect would seem to be equivalent, whether the debt comes to the owner by transfer from the living or by representing the dead. Yet it is said, that while in the latter case the owner of the debt cannot maintain an action for the penalty, an assignee can. In our judgment, the debt merely measures the penalty, and that is the true reason why the penalty does not survive. If the penalty, instead of being measured by the debt, had been a fixed sum recoverable by each creditor, without regard to the precise amount of his debt, probably it would not have been suggested that even an assignee of the debt could recover such penalty. But we need not pursue this subject further as the judgment must be reversed, not only upon the question already discussed, but upon still another ground.

We think the admission of the judgment recovered by the present plaintiff against the company was error. It has been expressly held by the Court of Appeals that in actions of this character proof of the recovery of such a judgment is neither conclusive nor *prima facie* evidence of the debt. (*Miller* v. *White*, 50 N. Y., 137.) This case has since been followed and its doctrine reaffirmed. (*McMahon* v. *Macy*, 51 N. Y., 155; *Rorke* v. *Thomas*, 56 id., 565.) These cases were distinguished, but in no respect overruled or even questioned, in *Stephens* v. *Fox* (83 N. Y., 313) and *Allen* v. *Clark* (108 id., 269). On the contrary, *Miller* v. *White* was referred to with approval in both of these later cases. *Stephens* v. *Fox* was the case of a stockholder who was indebted to the corporation to the amount unpaid upon his stock. The creditor sought to recover that indebtedness in satisfaction of his claim against the company. It was held that as the creditor claimed through the company, and was simply subrogated to its claim against the stockholder, the judgment was admissible. " A judgment," said Rapallo, J., " against the corporation being the highest evidence against it, should be as effectual *to pass its title to the fund in question* (the fund being the company's claim against the stockholder for his unpaid assessment) as a deed or any other form of transfer."

In *Allen* v. *Clark* the judgment was for costs recovered against a manufacturing company, plaintiff, by a defendant in an action brought by it. It was held that this judgment was a debt of the company which it was under the same obligation to pay as any other

debt. The reason upon which the decision in *Miller* v. *White* is based " can have," said EARL, J., " no application to a case like this, where there was no liability on the part of the company to pay the costs *antecedently to or independently of the judgment.*"

In the present case, the plaintiff introduced evidence tending to support the claims upon which this judgment was recovered. But the learned judge did not submit this evidence to the jury. On the contrary, he held that the defendant was concluded by the judgment, and instructed the jury that if the plaintiff was entitled to recover, it should be the amount of the judgment, including interest and costs.

The judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment and order reversed and new trial granted, with costs to the appellant to abide event.