### THE AMERICAN CREDIT-INDEMNITY COMPANY *v.* ELLIS, ET AL.

[No. 18,866.   Filed February 20, 1901.]

LIMITATION OF ACTIONS.—*Corporations.—Making False Report of Financial Condition of Corporation.—Manufacturing and Mining Companies.*—The action given by §15 of the act for the incorporation of manufacturing companies, the same being §5073 Burns 1894, for issuing a false report of the financial condition of the corporation, is remedial, and not penal, and is governed by the limitation of six years, and not by the shorter one of two years. *pp. 212-223.*

CORPORATIONS.—*False Report of Financial Condition.—Manufacturing and Mining Companies.—Action.—Complaint.*—A complaint against the directors of a corporation, under §§5071-5073 Burns 1894, for making a false report of the financial condition of the corporation, charging that the published report was wholly false, and was known by the defendants to be false, and was intended to deceive and mislead a certain company and the public, and did mislead and deceive such company, and induced it to extend credit to said corporation, in consequence whereof the company was damaged in a sum stated, was sufficient at least to require an answer. *p. 223.*

From the Elkhart Circuit Court. *Reversed.*

*J. S. Dodge* and *O. Z. Hubbell,* for appellant.
*O. T. Chamberlain* and *P. L. Turner,* for appellees.

DOWLING, C. J.—In this action, the appellant sought to charge the directors of the Eagle Knitting Company, a manufacturing corporation organized under the laws of the State of Indiana, with a liability under the statute for a debt due to the Beargrass Woolen Mills, to whose rights of action the appellant claims to have succeeded. Three

paragraphs of complaint were filed, and a demurrer to each was overruled. The answers of the defendants, excepting the Beargrass Woolen Mills, were the general denial and the statute of limitations of two years. Demurrers to the answers setting up the defense of the statute of limitations were overruled, and thereupon judgment was rendered in favor of the directors, who were the defendants below. The plaintiff appeals, and assigns for error the rulings of the court upon the demurrers to the second and third answers to the first and second paragraphs of the complaint, and to the second answer to the third paragraph of the complaint.

The material allegations of the first paragraph of the complaint are as follows: The plaintiff, the American Credit-Indemnity Company, is a corporation organized under the laws of the State of Indiana; on the 18th day of January, 1893, and long before that time, and up to and including the 26th day of September, 1893, the defendants, excepting the Beargrass Woolen Mills, were officers and stockholders of the Eagle Knitting Company, a manufacturing corporation organized under the laws of the State of Indiana; on the 18th day of January, 1893, the defendants, John W. Ellis, Jedediah M. Hughes, William H. Quaife, and Aaron Work, were members of the board of directors of said Eagle Knitting Company, and constituted a majority of said board; on the 19th day of January, 1893, the said Eagle Knitting Company, by its president and a majority of its directors, as aforesaid, published and caused to be published in the Elkhart Daily Review, a newspaper of general circulation, published in the city of Elkhart, etc., said city being the place where the home office of said Eagle Knitting Company was situated, a statement showing the condition of the said corporation at the close of its business on the 31st day of December, 1892, said statement being as follows: "Statement of the condition of the Eagle Knitting Company, of Elkhart, In-

diana, at the close of business on the 31st day of December, 1892.

### Assets.

| | |
|---|---|
| Machinery and fixtures | $23,547.69 |
| Building and real estate | 13,711.46 |
| Merchandise | 24,791.82 |
| Cash | 1,706.72 |
| Sundry accounts | 30,514.10 |
| Total | $94,271.79 |

### Liabilities.

| | |
|---|---|
| Stock | $55,200.00 |
| Bills and accounts | 39,071.79 |
| Total | $94,271.79 |

"We solemnly swear that the foregoing statement is true to the best of our knowledge and belief. John W. Ellis, J. M. Hughes, W. H. Quaife, Aaron Work. Majority of board of directors. Subscribed and sworn to before me this 18th day of January, 1893. Orville T. Chamberlain, Notary Public."

The said report was signed by the president, and a majority of the directors, and was verified by the oaths of the president, directors, and secretary of the said Eagle Knitting Company; on the 20th day of May, 1893, the Beargrass Woolen Mills, of Louisville, in the state of Kentucky, relying upon said statement, so published as aforesaid, and believing the same to be true, at the request of said Eagle Knitting Company, furnished said company goods and merchandise of the value of $3,985.48, the particulars of which are set forth in an account filed with said complaint marked exhibit A; on the 31st day of August, 1893, the said Eagle Knitting Company executed its note to the said Beargrass Woolen Mills in the sum of $1,217.30, and said note was taken by the said Beargrass Woolen Mills in

partial settlement of its said claim and account; a copy of the note is filed with the complaint; relying upon the said published statement and believing it to be true; the Beargrass Woolen Mills accepted the said note in partial payment of the said account; relying upon the said statement, and believing the same to be true, the Beargrass Woolen Mills extended said credit to the said Eagle Knitting Company; but, in truth and in fact, the said statement of the condition of the said Eagle Knitting Company was wholly false, and the said Eagle Knitting Company was wholly insolvent at the time of said publication, as the said officers and directors well knew.   The American Credit-Indemnity Company, the plaintiff herein, was, on the 20th day of May, 1893, and ever since has been, engaged in the business of indemnifying persons carrying on a wholesale trade in goods and merchandise against loss by reason of the failure of the purchasers of such goods to pay for the same, and it entered into a contract with the said Beargrass Woolen Mills agreeing to indemnify it against loss on account of the credit extended to the said Eagle Knitting Company; on the 10th day of May, 1893, and thenceforward, the said Eagle Knitting Company was wholly insolvent, but the defendants herein concealed the said fact from the said Beargrass Woolen Mills and from this plaintiff until the 26th day of September, 1893, when the affairs of the said Eagle Knitting Company, by the order of the Elkhart Circuit Court, were placed in the hands of a receiver; such receivership was long since wound up, and the receiver discharged by the order of the court; the account and note of the said Eagle Knitting Company due to the said Beargrass Woolen Mills, were filed with the receiver, but said receiver had no funds with which to pay the same, and, though long past due, said account and note remain wholly unpaid, and there is due upon the same $3,985.48, with interest from August 31, 1893.  On the 24th day of April, 1894, the defendant, the Beargrass

Woolen Mills, for a valuable consideration sold and trans-
ferred the said note, by indorsement in writing, to this
plaintiff, and on the same day, for a like consideration, it
also sold, assigned, and transferred in writing to this plain-
tiff the said account, a copy of such transfer being filed with
the complaint marked exhibit C; the Beargrass Woolen
Mills is made a defendant to answer. as to its interest in
said note and account; by reason of said false and fraudu-
lent publication, and the fact that the Beargrass Woolen
Mills relied upon the same, and had a right to rely thereon,
the plaintiff has been damaged in the sum of $5,000.

The second and third paragraphs differ from the first
in that they allege that the Eagle Knitting Company failed
to make and publish the report required by the statute, and
that instead thereof it made and published a false and
fraudulent report, which was delivered by the Eagle Knit-
ting Company and the said defendants to 'the Beargrass
Woolen Mills before the sale of the merchandise by the
latter to the former on May 20, 1893, and that by such
false statement the said Beargrass Woolen Mills was misled
and deceived, to its damage, etc.

The liability attempted to be enforced in this action
arises, as it is claimed, from the provisions of §§5071, 5072,
5073 Burns 1894, §§3863, 3864, 3865 R. S. 1881 and Hor-
ner 1897, which are in these words: "5071. (3863.) Every
such company shall, annually, within twenty days from the
first day of January, make a report which such company
shall cause to be published in some newspaper printed in
the county, if any (otherwise, in this State, nearest thereto),
which shall state the amount of capital, the amount of as-
sessments made and actually paid in, and the amount of
existing debts; which report shall be signed by the presi-
dent and a majority of the directors, and shall be verified
by the oaths of the president and such directors, and secre-
tary.    5072.    (3864.)    The word 'annually', as used in
the preceding section, shall be construed to mean once a

year, after such company has been doing business at least twelve months. 5073. (3865.) If any certificate or report made or public notice given by the officers of any such company, as required by this act, shall be false in any material representation, or if they shall fail to give such notice or make such report and any person or persons shall be misled or deceived by such false report or certificate or on account of such failure to make such report, and damaged thereby, then all the officers who shall sign the same, knowing it to be false, or fail to give the notice or make reports as aforesaid, shall be jointly and severally liable for all damages resulting from such failure on their part while they are stockholders in such company."

The particular clauses of the statute of limitations necessary to be considered on this appeal are these: "The following actions shall be commenced within six years after the cause of action has accrued, and not afterward: * * * Fourth. For relief against frauds." §293 Burns 1894, §292 R. S. 1881 and Horner 1897. "The following actions shall be commenced within the periods herein prescribed, after the cause of action has accrued, and not afterward: First. For injuries to person or character, and for a forfeiture or penalty given by statute, within two years." §294 Burns 1894, §293 R. S. 1881 and Horner 1897. The demurrers to the answers present the question whether this is an action to recover a penalty given by statute, and therefore liable to be barred in two years.

As originally adopted, section fifteen of the act for the incorporation of manufacturing and mining companies, and companies for mechanical, chemical, and building purposes, approved May 20, 1852, read as follows: "Section 15. If any certificate or report made, or public notice given, by the officers of any such company, as required by this act, shall be false in any material representation, or if they shall fail to give such notice, or make such report, all the officers who shall sign the same, knowing it to be false, or

fail to give the notice, or make reports, as aforesaid, shall *be jointly and severally liable for all the debts of the company contracted while they are stockholders, or officers thereof."* 1 R. S. 1852, p. 360.

The section of the act of 1852 just quoted was a copy of §12 of the general act of 1848 of New York for the formation of corporations for manufacturing, mining, mechanical, or chemical purposes, and was highly penal in its nature. The mere failure to make the required report, or the making of a false report, rendered the officers signing the same, knowing it to be false, or failing to make the report, liable for all the debts of the company contracted while they were stockholders, or officers thereof. It was not necessary that any one should be deceived, misled, or injured by the false report, or the failure to make a report. The liability attached at once, and to its full extent, as a penalty for the default or malfeasance of the officers, and its measure was the entire indebtedness of the corporation contracted while the delinquent directors and officers were stockholders or officers of the corporation. But in 1869, §15 of the act of 1852 was amended so as to remove its harsh and punitive features. The act as amended provided that if any report should be false in any material representation, or if the officers should fail to make such report, and any person or persons should be misled or deceived by such false report, or on account of such failure to make such report, then the officers signing the report knowing it to be false, or failing to make it, should be jointly and severally liable for all damages resulting from such failure on their part, while they were stockholders in such company. Acts 1869 (s. s.), p. 89. In *Union Iron Co. v. Pierce,* 4 Biss. 327, it was held that §15 of the act of 1852 was penal, but that the right to recover penalties incurred under it was extinguished by the amendment of 1869, because the latter was utterly inconsistent with it, and gave a different remedy. In its amended form, as section fifteen

now stands, it must be regarded as remedial and not penal, and hence an action under it is governed by the limitation of six years, and not by the shorter one of two years. Section fifteen, as we now find it, differs so widely from the provisions of the statutes of New York and other states, fixing the liability of officers upon a violation of the law requiring the making of a report, that the decisions of the courts of those states holding their statutes penal are wholly inapplicable. Their reasoning, however, marks and emphasizes the difference between their statutes and ours.

In *Merchants Bank* v. *Bliss*, 35 N. Y. 412, it is said: "The liability of these defendants arose only from their violation of the directions of the sections above quoted from the act under which the corporation was formed; not from their personal contract. * * * Under these sections, the trustees are declared to be jointly and severally liable for all the debts of the company, in case of a violation of their provisions. The liability, it must be observed, is not limited to the injury or damage sustained by the creditors in consequence of the violation; but upon failure to file the report, or upon making a prohibited dividend, however small or trifling the amount, the trustees are subjected to the payment of the whole amount of the debts of the company then existing, and for all that shall be contracted, in the one case before the report shall be made, and in the other while they shall respectively continue in office. These provisions appear to be severely punitive, inflicted on grounds of public policy, for the protection of creditors, and the prevention of frauds upon the public in respect to the financial condition of such corporations. It is clear that the liability of the trustees is not imposed as an indemnity, because it has no relation to the actual loss or injury sustained by the party in whose favor the action is given. The action depends wholly upon the statute. There never was any such remedy, or cause of action, in whole or in part, at common law. If any action could

have been maintained at common law, for either of the causes mentioned in sections twelve and thirteen of the general act in relation to manufacturing corporations, it could extend only to the actual damages or injury sustained. But those elements have nothing to do with the actions given by these sections. Nor, indeed, is it necessary that the creditor should have sustained any injury or damage by reason of a violation of those sections. It is sufficient that the party prosecuting the action should be a creditor when the violation of the law takes place. \* \* \* For these reasons, I am satisfied that the sections twelve and thirteen impose a penalty, or a disability in that nature, to which the shorter limitation of three years applies."

In *Veeder* v. *Baker,* 83 N. Y. 156, the court say on p. 160: "That such an action is a penal action, is no longer open to question in this court. The statute imposes upon the officers of such a company, as a penalty for a false report, liability for the debts of the company."

In *Stokes* v. *Stickney,* 96 N. Y. 323, the court clearly discriminates between penal and remedial actions: "Since that decision [*Merchants Bank* v. *Bliss,* 35 N. Y. 412] the subject of actions under that section of the statute has frequently been under the consideration of this court with the uniform conclusion that the actions therein provided for are penal in character, and are not in any respect based upon the theory of affording compensation to the injured party for damages sustained by reason of the omission complained of."

*Steam-Engine Co.* v. *Hubbard,* 101 U. S. 188, 25 L. Ed. 786, in which the Supreme Court of the United States characterized such enactments as penal, was founded upon a statute of the state of Connecticut making the officers of the corporation liable for all the debts of the corporation contracted during the period in which the officers were in default.

In *Huntington* v. *Attrill,* 146 U. S. 657, 13 Sup. Ct. 224,

36 L. Ed. 1123, Mr. Justice Gray, speaking for the court on p. 666, said: "In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the state, for a crime or offense against its laws. *United States* v. *Reisinger,* 128 U. S. 398, 402, 9 Sup. Ct. 99, 32 L. Ed. 480; *United States* v. *Chouteau,* 102 U. S. 603, 611, 26 L. Ed. 246. But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, *not limited to the damages suffered.* They are so elastic in meaning as even to be familiarly applied to cases of private contracts, wholly independent of statutes, as when we speak of the 'penal' sum or 'penalty' of a bond. In the words of Chief Justice Marshall: 'In general, a sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty, the legal operation of which is to cover the damages which the party, in whose favor the stipulation is made, may have sustained from the breach of contract by the opposite party.' *Tayloe* v. *Sandiford,* 7 Wheat. 13, 17, 7 L. Ed. 384, 385. Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed, nor the remedy given is strictly penal. The action of the owner of property against the hundred to recover damages caused by a mob was said by Justices Willes and Buller to be 'penal against the hundred, but certainly remedial as to the sufferer.' *Hyde* v. *Cogen,* 2 Doug. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a *qui tam* action to be

brought by any other person for threefold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer.   *   *   *   As said by Mr. Justice Ashurst in the King's Bench, and repeated by Mr. Justice Wilde in the supreme judicial court of Massachusetts, 'it has been held, in many instances, that where a statute gives accumulative damages to the party grieved, it is not a penal action.' *Woodgate* v. *Knatchbull,* 2 T. R. 148, 154; *Read* v. *Chelmsford,* 16 Pick. 128, 132. Thus a statute giving to a tenant, ousted without notice, double the yearly value of the premises against the land-lord, has been held to be 'not like a penal law where a punishment is imposed for a crime,' but 'rather as a remedial than a penal law,' because 'the act indeed does give a penalty, but it is to the party grieved.' *Lake* v. *Smith,* 1 Bos. & Pul. (N. R.) 174, 179, 180, 181; *Wilkinson* v. *Colley,* 5 Burr. 2694, 2698.   So in an action given by statute to a traveler injured through a defect in a highway, for double damages against the town, it was held unnecessary to aver that the facts constituted an offense, or to conclude against the form of the statute, because, as Chief Justice Shaw said:   'The action is purely remedial, and has none of the characteristics of a penal prosecution.   All damages for neglect or breach of duty operate to a certain extent as punishment; but the distinction is that it is prosecuted for the purpose of punishment, and to deter others from offending in like manner.   Here the plaintiff sets out the liability of the town to repair, and an injury to himself from a failure to perform that duty.   The law gives him enhanced damages; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity.' *Reed* v. *Northfield,* 13 Pick. 94, 100, 101."

The action given by section fifteen of the act for the incorporation of manufacturing companies for issuing a false report of the financial condition of the corporation is one which might have been maintained at common law, where

American, etc., Co. *v.* Ellis.

the. officers of the company issued the report knowing that it was false, intending that it should be seen by the plaintiff, and when it was seen by him, and he was deceived thereby and sustained damages. The suit under the statute is for deceit; it calls for indemnity only, and not punishment. It is therefore a remedial statute. An action upon it is not an action to recover a "penalty" given by statute, but a suit to recover damages for a fraud. The mere violation of the statute gives no right of action. The violation must produce injury, and the person aggrieved is entitled to compensation only to the extent of the damages sustained. As this action is not for a penalty given by statute, the answers setting up the statute of limitations of two years were insufficient, and the decision of the court overruling the demurrers to the answers was erroneous.

It is claimed, however, on behalf of the appellee, that the complaint does not state facts sufficient to constitute a cause of action, and that, even if the answers were bad, they were good enough for a bad complaint. There was neither a demurrer to the complaint, nor a motion to make its averments more certain, and, as it specifically charged that the published report was wholly false, and was known by the defendants to be so; that it was intended to deceive and mislead the Beargrass Woolen Mills Company, and the public, and was seen and relied upon by said company; that said Beargrass Woolen Mills Company was thereby misled and deceived, and induced to extend credit to the Eagle Knitting Company; and that in consequence thereof the Beargrass Woolen Mills Company was damaged,—we must regard the pleading as sufficient, at least, to require an answer. *Clow* v. *Brown,* 150 Ind. 185; *Real Estate Co.* v. *Macy,* 147 Ind. 568; *Cleveland, etc., R. Co.* v. *Wynant,* 100 Ind. 160.

Judgment reversed, with direction to sustain demurrers to answers, and for further proceedings in conformity with this opinion. Baker, J., took no part in this decision.