158   403
e164   284
164   285
164   286

## BROWN ET AL. v. CLOW ET AL.

[No. 19,317.   Filed February 19, 1902.   Rehearing denied April 25, 1902.]

CORPORATIONS.—*Payment of Capital Stock.*—*Liability of Directors.*—In an action against the directors of a corporation founded upon a violation of §5060 Burns 1901, imposing upon the directors of a corporation organized under the manufacturing and mining act the duty of requiring the capital stock, as fixed by the company, to be paid into the treasury within eighteen months from the incorporation of the company, the creditor is not required to show that he has been imposed upon by fraud, or that he has sustained any damages by the acts or omissions of the directors; but, immediately upon the insolvency of the corporation, occasioned by such violation, the directors become personally liable for all debts of the corporation thereafter contracted.   *pp. 410, 411.*

SAME.—*Payment of Capital Stock.*—*Liability of Directors.*—*Limitation of Actions.*—The right of recovery against the directors of a corporation conferred by §§5060, 5076 Burns 1901 for failing to require the capital stock to be paid into the treasury within eighteen months from the incorporation of the company must be regarded as a "penalty given by statute," and actions to enforce the same must be brought within two years.   *p. 411.*

SAME.—*Failure of Directors to Make Annual Report.*—*Limitation of Actions.*—Sections 5071, 5072, 5073 Burns 1901 requiring corporations to make and publish annual reports of their conditions, and making the officers thereof liable for all damages resulting from failure to make such report, or for making a false report, are not penal, but remedial, and the actions authorized by them being for relief against frauds may be brought at any time within six years.   *pp. 411, 412.*

SAME.—*Action Against Directors.*—*Former Adjudication.*—An answer, in an action by creditors against the directors of an insolvent corporation under the statute making directors liable for failing to make annual reports and to require the capital stock to be paid into the treasury within eighteen months, alleging that the receiver of the company, under the direction of the stockholders, brought suit against one of the defendants as such director for money alleged to have been wrongfully received by him while he was director of said company, and the court found that he was not a director at the date in question, does not constitute an adjudication of such question and estop plaintiffs from asserting and proving that defendant was a director at such time.   *pp. 412, 413.*

SAME.—*Failure of Directors to Require Capital Stock to be Paid.*—*Answer.*—An answer, in an action against the directors of a water-

works company for damages resulting from the failure of the directors to require the capital stock to be paid in within eighteen months as required by §5060 Burns 1901, that defendants transferred to the company their contract with the city to furnish the water supply in payment of the stock subscribed by them, and that a firm of contractors took the bonds of the company and all of the remainder of the stock in consideration of their agreement to build the works, did not avoid the allegations of the complaint that the capital stock was not paid in and that by reason thereof the corporation was insolvent. *pp. 414, 415.*

ABATEMENT AND REVIVAL.—*Corporations.*—*Action Against Directors.*— An action against a director of a corporation for the liability under the statute for failure to require the capital stock to be paid into the treasury within eighteen months, and to make annual reports, does not abate on the death of the defendant. *p. 415.*

CORPORATIONS.—*Action Against Former Director.*—*Agent.*—One who has resigned as director of a corporation, but continues to act as an agent or manager, cannot be held responsible, under the statute, to creditors, as a director, for malfeasance in office, unless he holds himself out, or permits himself to be held out, to the public as a director. *pp. 415-418.*

SAME.—*Failure of Directors to Make Annual Report.*—The mere failure of the directors of a corporation to publish the annual report required by statute, does not create a liability under §§5071, 5072, 5073 Burns 1901. The creditor must have been thereby misled and deceived, and the facts must be of such a character as to show how and why and in what manner the creditor was deceived and misled. *pp. 418, 419.*

SAME.—*Payment of Capital Stock.*—*Liability of Directors.*—The action of the board of directors of a water-works company in executing a mortgage upon the proposed plant, and the issue of bonds, and turning over the bonds and all of the stock except that held by the incorporators, which was paid for by the transfer to the company of the franchise, to a firm of contractors, in payment for the construction of the plant, rendered the corporation insolvent, and such directors liable to creditors under §§5060, 5076 Burns 1901. *pp. 419-421.*

SAME.—*Action Against Directors for Debt of Corporation.*—*Evidence.*—In an action against the directors of a corporation, under the statute, for misfeasance, a judgment recovered against the corporation for the debt is not admissible to establish the debt, but proof must be made of the transaction out of which the debt arose. *pp. 421, 422.*

From Clinton Circuit Court; *J. V. Kent*, Judge.

Action by James B. Clow and others against John S. Brown and others, directors of a corporation to enforce a

personal liability against defendants as such directors under the provisions of the statute. From a judgment for plaintiffs, defendants appeal. *Judgment affirmed against all of the defendants except E. B. Martindale, and reversed as to him.*

*B. Crane, A. B. Anderson, H. Taylor* and *C. Martindale,* for appellants.

*P. S. Kennedy* and *S. C. Kennedy,* for appellees.

Dowling, J.—This was an action to charge the directors of a company, organized under the general law for the incorporation of manufacturing companies, with a statutory liability on account of alleged violations of the said act. The case is here for the third time. *Clow* v. *Brown,* 134 Ind. 287; *Clow* v. *Brown,* 150 Ind. 185. See, also, *Bruner* v. *Brown,* 139 Ind. 600.

The complaint is in five paragraphs, designated as amended first, third, fourth, fifth, and sixth paragraphs. Issues were formed, and the cause was submitted to the court for trial. At the request of the parties a special finding was made, with conclusions of law thereon. The defendants separately excepted to each conclusion, and afterwards moved for judgment in their favor on the finding. This motion was overruled, as was also a motion for a new trial. Judgment was thereupon rendered for the plaintiffs below, and the defendants appealed. The rulings complained of are the decisions upon the demurrers to the answers of the defendants; upon the conclusions of law; the motion for judgment for the defendants on the findings; and on the motion for a new trial.

The first paragraph of the complaint, as amended, so far as it is necessary to consider the same, alleges a violation of §§5060, 5076 Burns 1901, 1 R. S. 1852, §8, p. 359, Acts 1863, p. 48, §2, which require that the capital stock, as fixed by the company, shall be paid into the treasury within eighteen months from the incorporation of the same, and declares the directors jointly and severally liable in an

action founded on the said statute for all debts contracted after any violation of the provisions of the said act whereby such company was rendered insolvent. It states that the capital stock was fixed at $200,000, but that, with the exception of $3,000, it was never subscribed for or paid in; that the company executed a mortgage on its contemplated plant and franchises to secure its bonds to the amount of $150,000; that it made a contract with the firm of Comegys & Lewis to build its works in consideration of the delivery and issue to them of all of said bonds and $197,000 of said capital stock; that the said bonds were not, in fact, delivered to said firm, but were pledged by the company, and that the money realized upon them was paid to said contractors, and the said stock was delivered to said firm as a gratuity. The amendment of this paragraph did not, as we think, change the original cause of action, but the additional averments were but an amplification of the grounds of complaint set forth in the original paragraph.

The third paragraph of the ·complaint is similar to the first, and avers that no money whatever was collected by said corporation and put into the treasury thereof, and that the company never had any money capital or resources.

The fourth paragraph of the complaint is founded upon §§5071, 5072, 5073 Burns 1901, 1 R. S. 1852, p. 360, §13, Acts 1869, p. 89, §§1, 2. It avers that the appellants were directors at the time the annual reports required by the statute should have been published, that the appellants failed to publish such reports, and that the appellees were thereby misled, deceived, and damaged.

The fifth and sixth paragraphs of the complaint did not differ materially from the first and third, and sought to charge the appellants with the debt due to the appellees as the consequence of their violation of the provisions of the statute, whereby the corporation was rendered insolvent.

The appellant Martindale answered in twenty-nine paragraphs, the first being a denial of the whole complaint. The

succeeding twenty-one paragraphs set up the statute of limitations of two and six years. The twenty-third paragraph specifically denied that. Martindale was a stockholder or director of the company at the time of the alleged violations of the statute. The twenty-fourth paragraph of the answer, which is directed to the first, third, fifth, and sixth paragraphs of the complaint, is a plea of a former adjudication. The twenty-fifth paragraph of the answer alleges that the appellants Martindale and Brown and one Pierce, since deceased, each subscribed for $1,000 of the capital stock of the company, and paid for the same by the transfer to the company of a franchise and contract to supply the city of Crawfordsville, Indiana, with water, said franchise and contract being worth $4,000; that the company, on April 13, 1886, made a written contract with the firm of Comegys & Lewis, of New York, to construct said water-works, and operate them for one year, and that as the sole and entire consideration therefor the company issued and delivered to Comegys & Lewis $150,000 of its first mortgage bonds and $197,000 of its capital stock, which stock had never been subscribed or issued for any other purpose; that the appellant Martindale never received nor converted to his own use any money or property of the company; that no agreement was made by which any of the directors of said company were to receive or did receive, directly or indirectly, any interest in, or portion of, or benefit from, the said bonds and stock so issued to Comegys & Lewis; that the capital stock was paid for in good faith, and into the treasury of the company, within eighteen months after the incorporation of the said company; and that all of the acts of the said company were done in good faith, and that none of the transactions thereof was fraudulent, simulated, fictitious, or pretended. The twenty-sixth paragraph of the answer of the appellant Martindale sets up the statute of limitations of two years to the amended first paragraph of the complaint, and avers that the cause of action in said first paragraph is different from

that contained in the original complaint. The twenty-seventh paragraph of appellant Martindale's answer sets up the limitation of six years to said amended first paragraph of the complaint, and alleges that the cause of action therein differs from that contained in the original complaint. The twenty-eighth paragraph of Martindale's answer to the fourth paragraph of the complaint, as amended, is a plea of a former adjudication as to the transfer of Martindale's stock and his resignation as a director before the alleged violations of the statute by the directors of the company. The twenty-ninth paragraph of Martindale's answer goes to the entire complaint, and is also a defense of a former adjudication upon the questions of Martindale's transfer of his stock, and his resignation of his position as a director. The appellant Brown filed a separate answer to the first, third, fifth, and sixth paragraphs of the complaint, alleging a former adjudication of the questions presented by said paragraphs. Brown also filed a separate partial answer to the fourth paragraph of the complaint, setting out in great detail the facts which were supposed to show a former adjudication of the questions of the liability of said Brown for his stock subscription of $1,000. Brown and Pierce filed a joint answer to the first paragraph of the complaint, the first paragraph of said answer being a denial. The remaining paragraphs of the joint answer were similar to those filed by Martindale. The death of the defendant Pierce having been suggested, one Taylor, as the administrator of his estate was substituted as a defendant to the action. Taylor, as such administrator, entered a special appearance, and filed pleas in abatement of the first, third, fourth, fifth, and sixth paragraphs of the complaint on the ground that the action was to recover a statutory liability, and that it abated on the death of the defendant Pierce, and could not be revived. Taylor, as such administrator, moved to dismiss the first, third, fifth, and sixth paragraphs of the complaint, as to Pierce. A like motion was subsequently made

Brown *v.* Clow.

as to the fourth paragraph of the complaint. Said administrator next filed his answer in denial of the whole complaint, with a further paragraph adopting as his own the affirmative answers filed by his decedent.

Demurrers were sustained to the fourth, eighth, sixteenth, twenty-fourth, twenty-fifth, and twenty-eighth paragraphs of Martindale's answer; also to Brown's separate answer to the first, third, fifth, and sixth paragraphs of complaint; also to Brown's and Pierce's joint paragraph number ten of their answer to the fourth paragraph of the amended complaint, and to the twelfth paragraph of their answer to the fourth paragraph of the complaint; also to the twenty-third paragraph of their joint answer to the first, third, fifth, and sixth paragraphs of the complaint; also to the twenty-fifth paragraph of their joint answer to the fourth paragraph of the complaint. A demurrer to Brown's separate partial answer to the fourth paragraph of the complaint was sustained. A demurrer to the pleas in abatement filed by Taylor, administrator of Pierce, was sustained. The motions of Taylor, administrator, to dismiss the first, third, fourth, fifth, and sixth paragraphs of the complaint were overruled. The plaintiffs below then filed replies in denial of all affirmative answers. The venue of the cause was changed to Clinton county. It was submitted to the court for trial with the result hereinbefore stated.

The sections of the statute which are supposed to render the appellants liable are these: "The capital stock, as fixed by such company, shall be paid into the treasury thereof within eighteen months from the incorporation of the same in such instalments as the by-laws of the company assess and direct." 1 R. S. 1852, §8, p. 359, §5060 Burns 1901. "If any company organized and established under the authority of this act, and of the act to which this is supplementary, shall violate any of the provisions thereof, and shall thereby become insolvent, the directors ordering or assenting to such violation shall jointly and severally be

liable, in an action founded on said acts, for all debts contracted after such violation as aforesaid." Acts 1863, p. 48, §5076 Burns 1901. "Every such company shall, annually, within twenty days from the first day of January, make a report, which such company shall cause to be published in some newspaper printed in the county, if any (otherwise, in this State, nearest thereto), which shall state the amount of capital, the amount of assessments made and actually paid in, and the amount of existing debts; which report shall be signed by the president and a majority of the directors, and shall be verified by the oaths of the president and such directors and secretary." 1 R. S. 1852, p. 358, §13, §5071 Burns 1901. "The word 'annually', as used in the preceding section, shall be construed to mean once a year, after such company has been doing business at least twelve months." Acts 1869, p. 89, §2, §5072 Burns 1901. "If any certificate or report made or public notice given by the officers of any such company, as required by this act, shall be false in any material representation, or if they shall fail to give such notice, or make such report, and any person or persons shall be misled or deceived by such false report or certificate, or on account of such failure to make such report, and damaged thereby, then all the officers who shall sign the same, knowing it to be false, or failed to give the notice or make reports as aforesaid, shall be jointly and severally liable for all damages resulting from such failure on their part while they are stockholders in such company." Acts 1869, p. 89, §1, §5073 Burns 1901.

Section 5060 Burns 1901, imposes upon the directors of a corporation organized under this statute the duty of requiring the capital stock, as fixed by the company, to be paid into the treasury within eighteen months from the incorporation of the company. The terms of the statute are imperative, and compliance with them is a matter of the most serious importance to all persons dealing with the cor-

poration.   The capital stock of a corporation, either subscribed for or paid in, is generally the basis of its credit and of its ability to pay its debts.   If a corporation whose stock has not been paid in or subscribed for is permitted by its directors to become indebted beyond its ability to pay, its insolvency must be ascribed to the violation by its directors of the provision of the statute which requires its capital stock to be paid into the treasury within eighteen months after its incorporation.   Under these circumstances, such violations of the provisions of the act render the directors ordering or assenting thereto jointly and severally liable for all debts contracted after such violation.   In an action against the directors, founded upon a violation of this section, the creditor is not required to show that he has been imposed upon by fraud, or that he has sustained any damage by the acts or omissions of the directors; but, immediately upon the insolvency of the corporation occasioned by such violation, the directors become personally liable for all of the debts of the corporation thereafter contracted. Thus, a liability is imposed which did not exist at common law, and which does not attach to the directors of a manufacturing corporation as an ordinary incident of their office. The liability so fixed upon them is a penalty or punishment for the violation of the duties with which they are expressly charged.   *Merchants Bank* v. *Bliss,* 35 N. Y. 412; *Veeder* v. *Baker,* 83 N. Y. 156; *Huntington* v. *Attrill,* 146 U. S. 657, 676, 13 Sup. Ct. 224, 36 L. Ed. 1123; *Savings Bank* v. *Johnson,* 18 Mont. 440, 45 Pac. 662, 33 L. R. A. 552, 56 Am. St. 591; *American, etc., Co.* v. *Ellis,* 156 Ind. 212.

The right of recovery against the directors conferred by §§5060, 5076 Burns 1901, must be regarded as "a penalty given by statute," and actions to enforce the same must, therefore, be brought within two years.   §294 Burns 1901, specification first.

Sections 5071, 5072, 5073 Burns 1901, are of a different character.   Actions under them are founded upon fraud and

deceit, which the creditor must allege and prove. The recovery is expressly limited to the amount of the damages sustained. These sections are in no sense penal, but are remedial, and the actions authorized by them, being for relief against frauds, may be brought at any time within six years after the cause of action accrues. §293 Burns 1901, specification fourth; *American, etc., Co.* v. *Ellis,* 156 Ind. 212, and authorities cited. The rulings of the court upon the demurrers to the several answers, setting up the defense of the statute of limitations, were consistent with these principles, and therefore were not erroneous.

The twenty-fourth paragraph of the answer of Martindale to the first, third, fifth, and sixth paragraphs of the complaint alleges that the appellees procured the appointment of a receiver for the Crawfordsville water-works, who was authorized to bring suits for the collection of unpaid subscriptions for the stock of said company; that, at the expense of the appellees and under their direction, an action was brought by the receiver against Martindale to collect a claim against him for alleged unpaid stock, and to recover moneys alleged to have been wrongfully received by him while he was a director of said company, and for which he was liable to account as a trustee; that this suit was tried in the Marion Superior Court which made a special finding of the facts, in which it was found that Martindale's stock had been paid for; that he was not a director after November 30, 1885; and that judgment was rendered on this finding. It is asserted that the appellees are estopped to deny the fact that Martindale resigned as a director November 30, 1885, and was not a director after that date.

The facts stated in this answer are not sufficient, in our opinion, to constitute a defense of *res judicata* in the present action. The answer is wanting in several of the elements of a good plea of that nature. A very exact description of this defense is found in Livingston's Code of Evidence for Louisiana, §193, where it is said that: *"Res judicata* is

whatever has been finally decided by a court of competent jurisdiction,—proceeding according to the forms of law,— by a valid sentence on a matter alleged, and either denied, or expressly or impliedly confessed by the other; and it is conclusive evidence of that which it decides, between the same parties, or those that represent them, litigating for the same thing, under the same title, and in the same quality." Here the actions were not between the same parties. In the former suit the receiver did not, in any sense, represent the claim of the appellees against the appellants arising from the violation of the statute by the appellants. The receiver did represent the appellees and all other creditors for the purpose of collecting from the appellant any moneys due from him to the corporation on account of capital stock subscribed or held by him, or moneys received and held by him in trust for the company. But the receiver could not, under any circumstances, have maintained an action against the directors for the penalty given by §§5060, 5076 Burns 1901; *Runner* v. *Dwiggins,* 147 Ind. 238, 36 L. R. A. 645. The statutory right to maintain that action was a personal one, and could be prosecuted only by each creditor for himself. In the suit brought by the receiver, he and the appellant were litigating for moneys alleged to be due to the company. The receiver claimed them by the title of the corporation, and in its right, in his quality as an officer of the court. The appellees may have procured the appointment of the receiver, paid his expenses, and directed him in the litigation, but these circumstances did not in any degree involve the adjudication of their claim against the appellants for the penalty given by the statute for a violation of its provisions. The finding and judgment in that cause that Martindale was not a director after a certain date did not, therefore, estop the appellees from asserting and proving in the present action that he was such director.

The twenty-fifth paragraph of Martindale's answer to the first, third, fifth, and sixth paragraphs of the complaint

is probably nothing more than an argumentative denial of the allegations of the several paragraphs of the complaint, which charge that the insolvency of the corporation was the result of the misfeasance of the directors in failing to require the payment of the capital stock within eighteen months after the incorporation of the company. It states that the three appellants Martindale, Brown, and Pierce paid for the $3,000 of stock subscribed by them by the transfer to the company of a contract with the city of Crawfordsville to supply that city with water, which was worth $4,000, and was accepted by the company in full payment for the stock subscribed by the appellants. But the answer entirely fails to show that the remaining $197,000 of the capital stock was ever subscribed or paid into the treasury. The averment that Comegys & Lewis took the bonds of the company to the amount of $150,000, secured by mortgage on its future plant, and the whole of the stock, in consideration of their agreement to build the works, did not avoid the allegations of the complaint that the capital stock was not paid in, and that by reason thereof the corporation was insolvent. The law contemplated and required that within eighteen months after its incorporation there should be subscribed for and paid into the treasury in money, or its fair, just, and honest equivalent, $200,000. Had this been done, the works could have been constructed and paid for, and there would have been a surplus in the treasury of the company to meet further expenses or to make other improvements. Instead of this, however, the directors required nothing to be paid in, unless the $3,000 for their own holdings of stock be excepted, and rendered the corporation utterly insolvent and unable to pay debts to outside creditors, by first mortgaging the future property to the amount of $150,000 and then turning over all of the bonds so secured, with the whole of the capital stock, excepting $3,000, to Comegys & Lewis. By these acts of the directors, the corporation was stripped of its property, and rendered

incapable of paying any debt thereafter contracted. With a full knowledge of this condition of its affairs, the directors caused or permitted the company to become indebted to the appellees. The answer was clearly insufficient, and the demurrer to it was properly sustained.

The twenty-eighth paragraph of Martindale's answer, like the twenty-fifth, is little more than an argumentative denial, and does not differ in legal effect from the twenty-fifth paragraph, and for the same reasons it was insufficient.

The joint answers of Brown and Pierce, as well as the separate answers of Brown, were similar to the separate answers of Martindale, and the grounds of demurrer to them were, as we think, sufficient. The separate partial answer of Brown to the fourth paragraph of the complaint sets out with great particularity of detail the proceedings in the action by the receiver against Brown, Pierce, and Martindale, including the special findings of the court; but, as already stated, the judgment in that case in favor of the appellants does not constitute a defense to the present action, nor do the findings of the court upon particular facts or issues incidentally involved in that action estop the appellees in this proceeding from pleading and proving the contrary.

Taylor, as administrator of the estate of Pierce, pleaded the death of his decedent in abatement of the action, on the ground that the suit was brought to recover a statutory penalty, and finally abated on the death of the decedent.

This point has been expressly decided otherwise by this court. *Western, etc., Co.* v. *Scircle,* 103 Ind. 227; *Davis* v. *State, ex rel.,* 119 Ind. 555; §§282, 283, 284 Burns 1901. These decisions rest upon the proper construction of the above statute, declaring that all causes of action survive, excepting such as are expressly mentioned and excluded by the statute.

The motions of Taylor, administrator, to strike out the first, third, fourth, fifth, and sixth paragraphs of the com-

plaint, rested upon the same grounds as the pleas in abatement, and there was no error in overruling them.

The next error assigned is upon the conclusions of law. The court, by its seventh finding, stated that on the 30th day of November, 1885, the said Brown, Pierce, and Elijah B. Martindale being the sole directors and stockholders of said corporation, it was agreed by them that the said Elijah B. Martindale should enter into a contract with said corporation to erect and build said water-works plant on the credit of said corporation, and without paying said capital stock, or any part thereof, except as the same would be paid by the construction of said plant; that to this end, and for said purpose, the said Elijah B. Martindale voluntarily assigned $1,000 of the stock of said company, owned by him, to his son Lyman B. Martindale. That said Elijah B. Martindale, in furtherance of said plan and scheme, then tendered his resignation as such director, which was accepted, and thereupon said Brown and Pierce elected said Lyman B. Martindale a director in place of said Elijah B. Martindale, but that said resignation of said Elijah B. Martindale and said election of his son Lyman B. Martindale were done for the purpose aforesaid; and that the said Elijah B. Martindale continued, in fact, agent and manager of said business, and had full knowledge of, and participated in, all the acts of said corporation thereafter.

Can one who has resigned as a director, and whose resignation has been accepted, but who continues to act as an agent or manager of the corporation, be held responsible, under the statute, to creditors, as a director, for malfeasance in office? It would seem that he cannot, unless he holds himself out, or permits himself to be held out, to the public as a director. Even then many difficulties suggest themselves where the action is for a statutory penalty. Service as a director is voluntary, and the law does not compel any person to continue in that relation if he sees fit to abandon it. With the qualifications above stated, Martindale's resig-

nation was no fraud upon any creditor.  What acts were performed by him after his resignation which indicated that he was still a director?  Drawing contracts between the company and Comegys & Lewis, and visiting Crawfordsville frequently at his own expense, and acting as agent and manager of the business of the corporation, and possessing knowledge of and participating in the acts of the corporation, did not constitute him a director.  None of the acts specifically mentioned in the finding pertains to the duty of a director.  They were such services as are usually performed by attorneys at law, agents, managers, or superintendents.  A director could not be required to perform them. *Kenner* v. *Whitelock,* 152 Ind. 635; *Jackson* v. *Clifford,* 5 App. D. C. 312; *Sinclair* v. *Fuller,* 41 N. Y. Supp. 193; *Bank of Metropolis* v. *Faber,* 56 N. Y. Supp. 542.

But it is said that Martindale signed the amended articles of association after he had assigned all of his stock, and had resigned as a director.  What, then, was the legal effect of that act?  The original articles were executed October 16, 1885, and were subscribed by Martindale, Brown, and Pierce, who were named therein as the directors for the first year.  Martindale resigned November 30, 1885.  His resignation was accepted by the board, and the vacancy thereby created was immediately filled by the election of L. B. Martindale.  The amended articles were executed February 12, 1887, and were signed by the stockholders of the company, Brown, Pierce, and L. B. Martindale, and also by the appellant Elijah B. Martindale.  The provision in the amended articles, which is supposed by counsel for appellees to fix upon Elijah B. Martindale the character and responsibility of a director at the time the amended articles were subscribed, is the following: "The affairs of said company in the future to be managed by a board of five directors instead of three, and that R. N. Hazard, of, etc., and George F. Wyman, of, etc., are hereby named and added to the di-

rectors named in the said original articles of association as directors to manage the affairs of said company for the first year, and serve with the present directors until the annual meeting of the stockholders, to be held on, etc., and until their successors are elected and qualified."

If Elijah B. Martindale was not a stockholder and director when the amended articles were signed, and did not intend to become a director by a new appointment; if he did not, after the amended articles were signed, act or vote as a director,—then the amended articles did not make him one. It does not appear from the special finding that Elijah B. Martindale did any act or performed any duty as a director after the amended articles were signed, and the conclusion that he was such director was not authorized by the finding. None of the alleged violations of the statute on which this action rests occurred before the transfer of Elijah B. Martindale's stock and his resignation as a director; and as there is no liability under the statute unless the person sought to be charged was a director at the time the malfeasance took place, it follows that Martindale could not be held responsible under any paragraph of the complaint, either for violations of the statute which resulted in the insolvency of the corporation, or for a failure to publish the annual reports required by law. The findings of fact did not authorize the conclusion that Martindale was liable to the appellees.

Brown and Pierce remained directors of the corporation until after the debt due to the appellees was contracted. Many of the questions raised on their behalf have been considered and decided in ruling upon errors assigned by Martindale. Those questions not so disposed of will be taken up in their order.

The seventh error assigned by Brown and Taylor, administrator, is that the court erred in its conclusions of law upon the finding of facts. Under this assignment it is contended that the facts found did not authorize the conclu-

sion that the appellees were deceived and misled to their damage by reason of the failure of the appellants to publish the annual statement required by §§5071, 5072, 5073 Burns 1901. While the court found that the appellees gave credit to the corporation, and that the annual reports were not published, it did not find any fact or facts from which the inference can be drawn that the failure to publish such reports caused the appellants to be misled and deceived. The fact of such failure to publish is not enough. The connection between such failure and the credit given by the appellees must be shown. The mere failure to publish the report does not, as the statute now stands, create the liability. The creditor must have been thereby misled and deceived. The facts must be of such a character as to show how and why and in what manner the creditor was deceived and misled. As was said by this court in *American, etc., Co.* v. *Ellis,* 156 Ind. 212, the action upon §§5071, 5072, 5073 Burns 1901, is for deceit, and all the authorities and all the precedents require that the circumstances shall be disclosed so that the court can, as a conclusion of law, state that by the failure to publish the report the creditor was deceived, misled, and damaged. 2 Chitty on Pl., 702 *et seq.*; 2 Smith's Leading Cases, 166 (*Pasley* v. *Freeman* and notes) ; 5 Am. & Eng. Ency. of Law, 318 *et seq.* and notes; 2 Thompson's Cor., §1636; *Ming* v. *Woolfolk,* 116 U. S. 599, 6 Sup. Ct. 489, 29 L. Ed. 740; Sedgwick on Damages, §103; *Andrus* v. *St. Louis, etc., Co.,* 130 U. S. 643, 9 Sup. Ct. 645, 32 L. Ed. 1054; Cooley on Torts, 557; 2 Addison on Torts, §§1217, 1218; *Niles* v. *Dodge,* 70 Ind. 147.

But the conclusion that Brown and Pierce were liable as directors, was, we think, fully justified by the finding of the facts that the corporation was rendered insolvent by the violation of the statute requiring the capital stock to be paid in within eighteen months. The agreement with Comegys & Lewis that they should have the stock and the bonds was doubtless valid as a contract, and bound the corporation,

but the effect of that agreement was to render the corporation absolutely insolvent. When the stock and the bonds secured by mortgage on the plant and works of the corporation were turned over to Comegys & Lewis, what was the financial situation of the corporation? It was without property of any kind with which to pay any debt thereafter contracted. Comegys & Lewis owned everything; the corporation, nothing.

Stripped of all disguises, it is clear that the plan of the promoters, stockholders, and directors of the company was to build the water-works without capital, and without risk or expense to themselves. By the execution of the mortgage upon the proposed plant and the issue of the bonds, the property of the corporation was placed beyond the reach of creditors, and its value as an asset of the corporation was destroyed. The contract with Comegys & Lewis, by which they were to receive the entire issue of bonds and all of the capital stock, excepting the $3,000 held by the directors, left the corporation without a dollar of available assets. The company undoubtedly had the right to contract with Comegys & Lewis to construct the works in consideration of the transfer to them of the $197,000 of the stock. Had this been the agreement, the plant when completed would have been the property of the company, to which its creditors could have resorted for the satisfaction of their claims. Or the corporation might have given to Comegys & Lewis the entire issue of the bonds secured by the mortgage on the plant, and caused the capital stock to be subscribed and paid for. This would have left the capital stock as a fund for the payment of the debts of the corporation. But the directors had no right, under the statute, to accept in payment of $197,000 of the capital stock property which was mortgaged for more than it was worth, and which was therefore of no value. The immediate insolvency of the corporation was the necessary consequence of their act. The statute required that

the capital stock should be paid into the treasury within eighteen months. Under the agreement with the contractors, nothing of value ever reached or could reach the treasury, directly or indirectly. With reference to the rights of other creditors, present or prospective, the corporation could not lawfully transfer its stock in consideration of the delivery to it of property known to be without value. The insolvency of the company was the natural and inevitable result of this act of the directors, and that act was, under the circumstances, a violation of the statute. Its legal consequence was the liability of the acting or assenting directors for all debts of the corporation thereafter contracted. The findings of fact furnished no basis for a judgment in favor of the appellants Brown and Taylor, administrator, and the motion for such judgment was properly overruled.

The views already expressed render an extended examination of many of the reasons assigned for a new trial by Brown and Taylor, administrator, unnecessary. The proposition that the court erred in refusing to admit in evidence the private correspondence between the appellees and their attorneys is wholly untenable. The statute expressly protects from exposure all confidential communications between client and attorney, and the rule of the common law was equally strict. §505 Burns 1901, specification third; *Brown* v. *Fouts,* 15 Ind. 50; *Bigler* v. *Reyher,* 43 Ind. 112; 1 Greenl. Ev., §240; *Foster* v. *Hall,* 12 Pick. (Mass.), 89; 22 Am. Dec. 400; *Cholmondeley* v. *Clinton,* 19 Ves. Jr. 261, 268.

A great many questions are raised upon the rulings of the court on the admission and exclusion of evidence, but a careful review of the proceedings satisfies us that no material error was committed by the court in these decisions. The conclusions announced by us upon other branches of the case render most of these rulings unimportant.

Among the reasons for a new trial is the objection that the amount of the recovery was too large. The court took

the judgment rendered in favor of the appellees against the corporation in the action upon their claim as the basis of the liability of the directors, and assessed the recovery in the present action at the amount of that judgment and interest thereon. In this, it seems, the court fell into error. The liability of the delinquent directors, as fixed by the statute, is limited to the amount of the debts contracted by the corporation after the wrongful act of the directors which caused the insolvency of the company. By this must be understood the sums for which the insolvent corporation originally became indebted. It has been held, in similar cases that, where a judgment has been recovered against the corporation for the debt, such judgment is not admissible to establish the debt, but that proof must be made of the transaction out of which the indebtedness arose. *Chase* v. *Curtis,* 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038; *Miller* v. *White,* 50 N. Y. 137; *Esmond* v. *Bullard,* 16 Hun 65; *Kraft* v. *Coykendall,* 34 Hun 285; *Brand* v. *Godwin,* 8 N. Y. Supp. 339; *Torbett* v. *Godwin,* 62 Hun 407, 17 N. Y. Supp. 46; *Cooke* v. *Pearce,* 23 S. C. 239; *McHarg* v. *Eastman,* 35 How. Pr. 205; *Norris* v. *Pilmore,* 1 Yeates (Pa.) 405; *Ritchie* v. *Shannon,* 2 Rawle (Pa.) 196.

The original debt in the present case was $3,703.82. If interest from the time the debt was contracted to the date of the judgment in this suit should be allowed, the amount due to the appellees at the time the finding was made would be $6,203.82. The judgment was for $6,494.85, or $291.03 more than the appellees were entitled to recover. If the appellees shall remit this amount within fifteen days after the date of this decision, the judgment as to the appellants Brown and Taylor, administrator, will be affirmed; otherwise, it will be reversed, with instructions to the court to sustain the motions of Brown and Taylor, administrator, for a new trial, and for further proceedings in conformity to this opinion.

As to the appellant Martindale, the judgment is reversed, with instructions to the court to restate its conclusions of law as to him, and to render judgment in favor of the said Martindale.